IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                                  )
        Plaintiff,          )
                                  )   CR No. 22-401-1
                                  )   Washington, D.C.
      vs.                )   July 21, 2023
                                  )   9:06 a.m.
DEMETRIUS MINOR,           )
                                  )
        Defendant.        )
_____)

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Paul Vincent Courtney
                        DOJ-USAO
                        United States
                        Attorney's Office
                        601 D Street NW
                        Washington, D.C. 20530
                        (202) 252-1719
                        Email: paul.courtney@usdoj.gov

For the Defendant:           Elizabeth Ann Mullin
                        FEDERAL PUBLIC DEFENDER
                        FOR THE DISTRICT OF COLUMBIA
                        625 Indiana Ave,NW
                        Suite 500
                        Washington, D.C. 20004
                        (202) 208-7500
                        Email: elizabeth_mullin@fd.org

2

APPEARANCES CONTINUED:

Probation Officer:          Sherry Baker

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY:  All rise.  This court is now in session.  The Honorable Amit P. Mehta presiding.

THE COURT:  Good morning.  Please be seated, everyone.

COURTROOM DEPUTY:  Good morning, Your Honor.  This is Criminal Case No. 22-401-1, United States of America versus Demetrius Minor.

Paul Courtney for the government.

Elizabeth Mullin for the defense.

Sherry Baker on behalf of the Probation Office.

The defendant is appearing in person for these proceedings.

THE COURT:  All right.  Good morning, Counsel.  Mr. Minor good morning to you, sir.

THE DEFENDANT:  Good morning.

THE COURT:  Okay.  So we're here for sentencing this morning.  Are both sides ready to proceed?

MS. MULLIN:  Yes, Your Honor.

MR. COURTNEY:  Yes, Your Honor.

THE COURT:  Okay.  All right.

So let me just begin by listing what I received and reviewed.

The Presentence Investigation Report at 58 and the Probation Office's recommendation at 59; the government's

4

memorandum in aid of sentencing at 60; defendant's memorandum in aid of sentencing at 61, including the exhibits that were attached at 61-1, -2, and -3; and then there were additional supplements filed at ECF 62 and 63.

Am I missing anything?

MR. COURTNEY:  Not from the government, thank you.

MS. MULLIN:  No, Your Honor, nothing for the defense.

THE COURT:  All right.  Ms. Mullin, can I just ask you to confirm that Mr. Minor has reviewed and discussed -- that Mr. Minor has reviewed the report?

MS. MULLIN:  Yes, Your Honor, he has.

THE COURT:  Okay.  All right.

All right.  Anything we need to take up before we get started?

MR. COURTNEY:  Not from the government.

MS. MULLIN:  Your Honor, we just had one additional correction to the PSR that I learned of after the PSR was published.  It was included in my sentencing memorandum.  If the Court wants me to address it now, I can.

THE COURT:  Sure.

MS. MULLIN:  Paragraph 68, the PSR reflects that Mr. Minor was working at Papa Johns.  He was working at Papa Johns until, I would say, end of June when he became ill and he was diagnosed with cellulitis in his leg and basically

was immobile for about a week.  Now, he's back on his feet and he's slated to actually start delivering pizzas at Domino's tomorrow.

THE DEFENDANT:  Tonight.

MS. MULLIN:  Tonight.

But I just wanted to make that clear, and also include his diagnosis of cellulitis in the PSR.

THE COURT:  All right.  We can make sure those additions are made.

Okay.  Let me just state the Guidelines calculations and then we'll hear from the parties.

So the applicable Guideline is 2K2.1.  Base Offense Level is a 22 because the conduct involved 25 to 99 firearms.  Six levels are added because the conduct involved trafficking.  Four levels are added -- hang on for a second. I'm sorry, there's a typo in my notes.

The Base Offense Level is a 12.  Six levels are added for the number of firearms; trafficking conduct, four additional levels, for an adjusted offense level of 22.

Mr. Minor has accepted responsibility, reduction by three levels, for a total offense level of a 19.

He has no prior criminal history.  The Guidelines Range is 30 to 37 months and $10,000 to $100,000 fine.

Okay.  With that, why don't we begin with the government's allocution.

MR. COURTNEY:  Good morning.

THE COURT:  Good morning.

MR. COURTNEY:  The government, as stated in its sentencing memorandum, is requesting a sentence of 37 months in imprisonment, to be followed by three years of supervised release, both as a punishment for the conduct and for the purposes of general deterrence.

I won't retread the arguments that are in the sentencing memorandum, but I have a few additional points to raise here today.

From the defense's sentencing materials, it appears that the defendant may not fully appreciate the wrongfulness of his conduct and seeks to deflect blame on to others.

Throughout the materials, there's a lot of blame placed on Mr. Willis.  I think given Mr. Willis' criminal record and the conduct that resulted in his current sentence, he is a very easy target.  But Mr. Minor is an adult, he has agency, he chose to engage in this conduct because he wanted to make a quick profit, and he admitted in the Statement of Offense that he sold these guns not only to Mr. Willis but to others.

He also points to the pandemic and lost opportunity.  Everyone, everyone was affected by the pandemic, everyone had lost opportunities.  I will say that

the work that Mr. Minor ultimately chose to do lawfully, doing food service delivery, that job seems to have been available then; in fact, that was a big job that was available then.  If people wanted to eat, they had to order delivery.  There were not a lot of options during that time.

And there's a point where the defense tries to pin some blame on the gun shops and there's a reference to the fact that these were guns that were purchased legally.  And I take issue with that because they weren't really purchased legally.  There was the pretense of a lawful purchase, but each and every time Mr. Minor went to those stores, 21 times in six months, he filled out a form 4473, certifying that the gun was for him and he was not the intended recipient, he intended to sell it for profit.

THE COURT:  Could I ask, just sort of out of intellectual curiosity, how is it that somebody can walk into different gun stores over the course of six months and buy 30 plus weapons and there not be any sort of flag that goes up to have law enforcement go out and at least have a conversation with the person?

MR. COURTNEY:  I don't have a good answer for that question.  I know that the records are not stored in a kind of central database but kept at the level of the individual FFL, at least that's my understanding.

THE COURT:  They don't get fed up into a central

database that would let ATF know if somebody has bought an arsenal of weapons?

MR. COURTNEY:  Correct.  My understanding is that there is no such federal database.

But what Mr. Minor did was put at least 32, by the government's count, firearms on to the street.  This wasn't a mere blip.  It was a six-month course of conduct that involved 21 separate trips to gun shops that stopped only because he was caught.

And the reason that he was caught was because one of those guns was used in an assault for which his co-defendant was sentenced to a 12-year prison term.

And fortunately no one was physically hurt in that incident, but it's only a matter of time until someone is seriously physically hurt or killed by one of these guns because that's their purpose.  There's no purpose for a gun other than to harm or kill another person.

THE COURT:  And how many of the 32 has the government -- or has law enforcement been able to recover to your knowledge?

MR. COURTNEY:  I don't have a specific number. It's a handful.  So I would say the vast majority of them have not been recovered.

And what's difficult is that we may never know if one of these guns is responsible for a murder or violent

crime because serial numbers get obliterated and guns get tossed, and there are a lot of crimes that the government prosecutes where someone is seriously hurt or killed and the firearm is just never recovered or traceable.

And Mr. Minor surely knew when he was selling these guns that the recipients were dangerous people who couldn't do what he did and go into the store and buy them. That's why they were willing to pay the premium. It makes no sense unless the person has some prohibiting characteristic. And the purpose of guns is obvious. It's to harm others.

The defendant in the sentencing materials invites the Court to depart downward under 5H1.4 because of his weight and physical condition. I assume that Ms. Mullin is really asking for a variance under those principles because a downward departure is barred by the plea agreement.

But there's no reason for the Court to depart or vary downward based on weight or hypertension or asthma.

I would direct the Court to the Seventh Circuit's decision in *United States versus Sherman*, which I have a copy of it. It's a 1996 decision. My understanding is that 5H1.4 was phrased differently then and was probably a little bit more restrictive, but the principles are the same. This was the only reported decision that I could find quickly involving 5H1.4, weight, asthma, hypertension.

And the District Court initially granted a downward departure based on his physical observations in court of the defendant and the arguments of counsel, and the Seventh Circuit reversed and found that there was an insufficient factual basis in the record for that departure.

On remand, there was an evidentiary hearing. The Court heard from a doctor.  The Court learned that hypertension and asthma are treatable conditions and can be treated at BOP.  In the defense's sentencing materials, they do indicate that Mr. Minor is taking mediation for those complications.

So I think it's fair to assume that they could be treated at BOP.

And they are fairly common.

And I would note that those conditions certainly didn't prevent Mr. Minor from engaging in the conduct at issue in this case.  He appears to be, with the exception of a brief recent bout of cellulitis, mobile and able to work and plans to continue working.

And, finally, I'd just say that a 37-month sentence, a serious custodial sentence is important for general deterrence.

And what facilitated Mr. Minor's crime in this case is his absence of a criminal record.  And so without the kind of looming threat of a serious custodial sentence,

people with no record would say, "Well, I can just go and buy guns and put them on the street.  And if it I'm caught, I have no record so I'll get probation."  And that just can't be an acceptable outcome, given the gravity of the harm that is caused by these weapons, particularly in this area, particularly in recent years.

And I would just note that Congress has recognized that gun trafficking and straw purchasing is a very serious problem.

In June of 2022, shortly after the conduct in this case, it passed the bipartisan Safer Communities Act.  The conduct at issue in this case would likely fall under, at least, 18 United States Code 933, which is a new trafficking offense.  That's punishable by 15 years, not five years, as (a)(1)(A) is, and seems to overlap with (a)(1)(A).

So we have recent evidence of legislative intent that Congress considers this a very serious problem in terms of community safety and believes that it should be punished severely.

THE COURT:  Counsel, before you sit down, a couple of additional questions.

What are your thoughts -- Ms. Mullin has included some comparables as part of Exhibit A of her sentencing memo.  I'm not -- I'll have to ask Ms. Mullin where the specific data came from when she does her allocution; but

there's at least a suggestion from this material that Guideline sentences for this particular offense at this category, criminal history category and offense level is the exception.  You know, there is not a, what one would call a statistical number of cases, there's only seven over five years and some of them have 5Ks.  But bottom line is that of the seven, only one was a Guidelines sentence.  That's one.

And even then, you know, the JSIN numbers, and, again, I'm not quite sure how these numbers have been collected because, at least as I understand the website, the website just provides for data with respect to a guideline and criminal history and offense level but doesn't drill down to actually the offense of conviction.

But in any event, there's also sort of the broader statistic of 101 cases for 22(a)(1)(A), 28 of those within Guideline, and 70 cases under Guidelines or nearly 70 percent.

So I'm just curious what your thoughts are about that.

MR. COURTNEY:  Yeah.  And I tried to look on at least the Sentencing Commission's website and wasn't able to quite access the data that's here.

It's very hard to say in the absence of any understanding of the facts and circumstances of those cases.  I mean, it did stand out to me that there was, among the

sentences given, a 37-month sentence of imprisonment so there was a Guidelines sentence.  For most of the sentences where no time in custody was given, all but two of the Guidelines sentences lower, so presumably it didn't involve the same amount of firearms or trafficking, because it would have resulted in the same Guidelines calculations.

I just really -- it's hard to draw comparisons to other cases when there's just no information about the facts or circumstances, and the government's recommendation is based on the facts and circumstances of this case in which we know at least one of the firearms was recovered in the commission of a serious violent crime that got a serious sentence; and many others are presumably still out in the community as gun violence goes up and up by the day.

THE COURT:  Okay.

One other question is, how does the government think I ought to weigh the fact that, you know, Mr. Minor -- the government is right that the kind of conduct here is, by definition, facilitated by an absence of criminal history.  But Mr. Minor's now 30, 31 years old.  You know, in the time this case has been pending, he seems to have taken -- he has taken steps to get back on track.

How does the government see that factor and how it ought to play into this balancing I'm supposed to conduct here?

MR. COURTNEY:  I mean, the absence of criminal history does factor into the Guidelines Range and that he's Category A.

THE COURT:  Right.

MR. COURTNEY:  I mean, if he had a criminal history he would have a higher range so that is being taken into account with the Guidelines Range.

I mean, it's --

THE COURT:  Right.  I'm less concerned about that, and I'm sort of a more recent -- or more recent history since the case was filed.

MR. COURTNEY:  Right.

I mean, the Court, I think, should give that whatever weight the Court deems appropriate.

This is, I think, kind of a unique crime in that it's facilitating violent crime but it's not itself a violent act.  And so -- and it's not easy to replicate once you're caught because people are clued into the fact that you're doing it.

And so I don't think he had an option but to stop this crime and this is the type of crime that he's chosen to commit.

THE COURT:  Okay.

Ms. Mullin.

MS. MULLIN:  Thank you, Your Honor.

I'd like to start by addressing one point in the government's allocution.

Mr. Minor has unequivocally accepted responsibility for his conduct and that's reflected in his plea agreement, in his letter to the Court, and I'd ask the Court not to take any arguments that I've made in my memorandum as his public defender against him or as meant to undermine his acceptance of responsibility.

Your Honor, Mr. Minor's offense conduct ended over 18 months ago, and I think maybe this is what the Court was getting at in its last question to the government.  He ceased his offense conduct 18 months ago voluntarily after being interviewed by law enforcement.

Since then, he's been gainfully, legally employed. The Court received a letter from his manager at Papa Johns who said he was a valued employee, he worked hard, always came on time, was willing to take more shifts.

He's also been a full-time caretaker for his mother who's in poor health.  And we submit that a prison sentence would derail the positive conduct that he has taken -- the positive course that he is on and has been on since he was interviewed by law enforcement 18 months ago.

With respect to my request for a variance based on his health and his physical condition, I was merely pointing out -- I know that I can't ask for a downward departure --

16

I was merely pointing that that would be available for the Court if the Court wanted to find hat his physical condition is a basis for a downward departure.

Your Honor, with respect to the nature and circumstances of the offense, when I say he lawfully bought firearms, he went into the gun shops, one gun shop he bought 25 different firearms, nothing stopped him, he had no records, he was able to buy them.

And, you know, this is not someone who was immediately putting them on the black market.  His cousin expressed interest in purchasing a firearm.  They have a very close relationship.  His cousin is someone who is like an older brother figure to him.

So I take issue with the government's characterization that he was willfully putting these guns into the hands of criminals.  His cousin is a felon, yes, but he's also, to him, a very close family member and someone that he always looked up to.  So I think the context here is important.

THE COURT:  Can I ask, I mean, to the extent that you're able to share this with me.  Because we had Mr. Willis in front of me the other day and my current understanding is that of the 30 plus firearms, only eight were transferred to him.  Your sentencing memo, I think it says that also some were sold to an associate of

Mr. Willis'.

I'm trying to figure out sort of how these guns were allocated and to whom.

MS. MULLIN:  They all went to Mr. Willis. Mr. Willis had an associate, a female associate that he would sometimes send to go pick up the firearms, but from Mr. Minor's perspective, they were all going to Mr. Willis.

MR. COURTNEY:  May I confer with Ms. Mullin?

(Counsel conferred off the record.)

MS. MULLIN:  Your Honor, my understanding is, the government counsel corrected me, in interviews with law enforcement, he admitted to selling one gun to a high school friend, but the vast majority of the guns that he sold went to his cousin, Mr. Willis, and an associate of his.  And the government can correct me if I am wrong here, but that's -- I mean, that's what happened here.  His cousin expressed an interest in the firearms that Mr. Minor could purchase, and it was Mr. Minor's intention to sell them to Mr. Willis, and Mr. Willis' associate, who Mr. Willis sent out on different occasions to pick up the firearms.

The government also speaks of sort of an incalculable harm that these guns can cause, and, of course, that is true but the government can't really quantify what harm the guns caused.  Two ended up at crime scenes.  One ended up in a car with marijuana.  The other Mr. Willis used

18

in a terrible assault on his girlfriend.  I mean, I would just say, of course, the fact that guns could be found in the hands of criminals is foreseeable to Mr. Minor, but it's not like when Mr. Minor sold the firearm to Mr. Willis, Mr. Willis said, "I'm going to go use this to the assault my girlfriend."  I mean, there was no conversation about where the guns were going to go or what was going to be done with the firearms.

THE COURT:  True.  On the other hand, I don't think it requires the conversation to know where it could end up and presumably your client knew what Mr. Willis' criminal history entailed, which is quite substantial and violent.

MS. MULLIN:  He did know that his cousin was a felony.  But I don't -- I think -- and this, you know, I don't think he knew exactly what his cousin had been up to.

And, I mean, we're not saying that he was -- it wasn't foreseeable to him that the guns could end up at crime scenes, but it isn't as if he was purchasing them to facilitate a crime, a specific crime.

THE COURT:  That may be true.

Look, I find this all very difficult in part because your client has no prior criminal history.  He's clearly tried to get back on his feet and head in the right

19

direction; not just head in the right direction but, you know, do good for himself and his family and his community over the last year and a half.

At the same time, the nature of the conduct, almost by definition for this type of offense involves people with no prior criminal history, and so they are defendants who are acting out of character, by and large. And I've had at least one of these before, if not two. And it's just tragic, because oftentimes the person who's making the purchases is doing so under the influence of someone else.

In the earlier case it was because of a boyfriend and in this case, it seems like Mr. Minor's cousin was, at least, influencing him to some degree.

At the same time, you know, this is how guns get out on the street and end up in the hands of people who are using them for criminal purposes. I mean, they're not being purchased for self-defense. I mean, they're being used in connection with crimes; and, you know, unless that conduit is punished, I'm not quite sure how people understand, those people who don't have criminal records, that this is just not acceptable, that you can't do this.

And I'm not asking you for a response, but I find this very difficult, given all the factors I'm supposed to consider.

MS. MULLIN:  Well, with respect to general deterrence, you know, the studies show repeatedly that it's not the length of a prison sentence or even imprisonment itself that deters the public.  It's the fact of getting caught.

I mean, he has been caught.

THE COURT:  No, I know.  I've never quite understood how that helps because it only seems to me to then mean we ought to have more police and more of a police state.  In other words, we ought to have a greater heightened sense of getting caught, and I don't think we want that either.

MS. MULLIN:  But how -- I mean, I just -- I guess I don't understand how imprisonment for this man, who stopped his conduct 18 months ago, who can no longer enter any gun shops and purchase a gun, how, you know, derailing him from the positive course that he's on is going to deter anyone.  It's just -- it's not -- I think that just -- it's a fallacy.

THE COURT:  Yes, maybe it's a fallacy.

But, you know, if you told the community that somebody went in and purchased 30 plus guns and then put them -- facilitated putting them out on the street and they were to learn that that person gets no time, I think they'd say, that can't be right, and the next person who doesn't

21

have a criminal history who finds themselves in this difficult circumstance might say, I'll do the same thing because I can then convince the Court I'm just going to get probation.

I don't know that anybody thinks in those terms and that's fair.  But there is a -- there just seems to me to be a substantial societal impact that may not have been intended by the conduct but was certainly clearly foreseeable by it.

MS. MULLIN:  But I mean, I think the logical extension of that is that all sellers and manufacturers of firearms are the cause of the incalculable harm that gun violence undoubtedly wreaks on our society.  And yet it's Mr. Minor who's going to prison, not them.  I mean, that doesn't -- I don't think that is a just punishment.  That doesn't promote respect for the law when it's, you know, on the shoulders of Mr. Minor --

THE COURT:  That's fair.

MS. MULLIN:  -- a black man who's going to prison for this firearms possession, which is vaunted by many as one of our fundamental constitutional rights.  I don't personally don't agree with that, but I just don't agree with Mr. Minor -- the harm of gun violence being laid at Mr. Minor's feet.  I mean, especially since he stopped his conduct voluntarily after he was interviewed by law

22

enforcement and righted his course.

So, I mean, he's -- putting Mr. Minor in prison is putting an ineffective Band-Aid over a gushing wound.  And I submit that it causes more harm to put someone like Mr. Minor in prison who is on a positive course, who stopped his offense conduct, who can tell the community, don't get involved in this, now I have a felony.  Now I can't go out and start a small business, or now I can't go out and do some of the things that people -- that I might want to do because I have a felony conviction.  Now I'll be taken away from my mother who -- and I don't mean to be dramatic or -- I don't know -- but tug at -- sort of overly emotional about it, but she could pass away while he's in prison.  Her sole caretaker.

I mean, I just don't know how that does anything to promote the safety of the community, general deterrence, certainly not specific deterrence here as his conduct has shown that he has been specifically deterred and he's, as a fact, specifically deterred because he can't go in and purchase firearms.

So, you know, I think a sentence that would reflect that imprisonment, in some cases, even in cases involving firearms, is an imperfect sanction.  It just doesn't get at what we need to do it prevent gun violence, to send a message about gun violence.

And Mr. Minor's case is a perfect example of that. And the JSIN data shows that.

THE COURT:  Can I ask where this comes from? You'll forgive me, but I tried to kind of figure if out but I just couldn't.

MS. MULLIN:  So the statistics come from the JSIN. And then the spreadsheet comes from the Sentencing Resource Counsel.  And that data I'll admit I did not cull it myself, it's a paralegal in our office who used to be a probation officer, but the information about the individual cases came from the Sentencing Resource Counsel.

THE COURT:  But even the JSIN data, I don't quite -- and maybe I'm just not adept enough.  But when I go to that website, and maybe you're going to a different one, it doesn't allow someone to specify the statute of conviction, it only permits you to search by -- or filter by guideline, criminal history, and offense -- you know, total offense level.  So I'm not quite sure how we're getting down even further to specific statute of conviction.

MS. MULLIN:  He was able to do that.

I've emailed him and he can come to court and explain how he did it to the Court.  But it does make sense in that you would expect to see different sentences for different offenses of convictions, because 2K2.1 is, you know, covers a wide swath of offenses.

24

THE COURT:  Right.

MS. MULLIN:  And I know that it's possible to isolate the sentences for 922(g), for example.

And so if the Court would give me a brief break, I could call him up and have him come to court -- to the courtroom.

THE COURT:  That's okay.  I'd be curious how it's done because I've not seen -- I mean, you can go -- I mean, I think you can and I can, we can go to the Sentencing Commission and ask for the information, but I didn't know that it was something that was available without going through them.

MS. MULLIN:  He may have, and this is, again, I'm happy to reach out to him.  He may have gone through each and every case, because in the Probation Officer's initial group, there were a couple hundred.  That may be how he did it.

THE COURT:  Yeah, I mean, if you've got a couple minutes when I take a break, I would be just curious.  It's not essential to the ultimate sentence here.

Okay.  Sorry, I interrupted you to ask the question.

MS. MULLIN:  So, Your Honor, I had sort of -- I wanted to go through the goals of sentencing and submit my argument as to why a sentence of imprisonment doesn't meet

25

those goals.  And we've covered specific deterrence, general deterrence.

As for promoting rehabilitation, I mean, again, putting Mr. Minor in prison where he won't have -- I mean, he doesn't have a drug addiction, he has his high school diploma, so he's not really going to have much programming available to him in prison, not that it's that great for those who have those issues, but he's just going to sit there for three years per the government's request.

This would remove him from the positive influences in his life, his mother, his grandmother, his brother.  Take him away from earning an honest living.  He's an hourly wage worker so he goes to prison for six months, a year, three years, he loses those wages, he comes out even more destitute than he already is.  Comes out with a felony conviction so he has to start all over again.

You know, I mean, right now he has a good relationship with the Papa Johns' manager and the Domino's manager, but when he comes out from prison, who knows if he'll be able to get those jobs back because now he'll have a felony conviction and he'll have been to prison.

Mr. Minor has shown that he is not someone who needs to be incapacitated for the safety of the community.  Again, he himself has never engaged in any violence.  He was able to go into the gun stores because he had no record.  He

26

now can't do that.  He obviously, even if he could, I know he wouldn't.

And, Your Honor, again, I can get more specific information about the JSIN data.  I think that what Mr. Moran did was go through each and every case that probation officer had called.  But I think the data shows that a sentence of probation with home incarceration, home confinement, would not result in a sentencing disparity.

You know, and again, I just -- I have to go back to promoting respect for the law.  For better or for worse, we're a nation where vast numbers of people love guns and they -- firearms possession is a vaunted constitutional right.  But -- and people can open carry, now there's a bill in Congress that would allow D.C. residents to open carry.  It's crazy to me.  But the answer to that is not putting Mr. Minor in prison.  It does nothing.

The government talks about incalculable harm and can't really qualify, again, the harm that he caused.  But unnecessary imprisonment for someone in his situation also causes incalculable harm, and I would submit quantifiable harm.

So, Your Honor, for all of reasons in our sentencing memorandum and in the letters attached to it, we would ask the Court to impose a sentence that does not include a period of incarceration.

THE COURT:  All right.  Thank you, Ms. Mullin.

Before I hear from Mr. Minor, if he'd like to be heard, can I just ask government counsel one thing?

I would like to understand, both for present purposes and for Mr. Willis, how many guns ended up in Mr. Willis' hands, whether directly or through his, you know, representative, his girlfriend or whoever it may have been?

MR. COURTNEY:  I think the difficulty --

I'll approach.

The difficulty with quantifying that exact number is just an absence of proof.  It's a circumstantial case.

THE COURT:  Well, you've spoken at least three times to Mr. Minor, so presumably he's given some indication of how many of those weapons ended up with his cousin.

MR. COURTNEY:  Right.

And Mr. Minor's indication in those conversations, some of which were off the record, has always been that the vast majority of them went to Mr. Willis.

Mr. Willis --

THE COURT:  Right, but -- okay.  Go ahead.

MR. COURTNEY:  There's not necessarily evidence that corroborates that, I think as the Court knows from the Statement of Offense and the transactions that can be shown circumstantially.  Mr. Willis doesn't accept responsibility

for a vast majority of the guns.  So we're -- it could be a lot and it could -- it's at least eight, it could be that few, it could be lot more, and unfortunately we just don't have the evidence that gets us to the number.

THE COURT:  Okay.

Look, you'll forgive me, but I mean, I do -- this is perhaps not for this hearing, but I'll say it anyway.

The government's recommendation for Mr. Willis was a little bit surprising to me, which is a three-years concurrent sentence, and you're asking for 37 months here. I mean, I understand he's the one who walked into the stores and bought the guns and then transferred them, but, at least for Mr. Willis, there's sort of a no harm, no foul quality to it.  I mean, three years' concurrent to what he already got in Superior Court to a guy that's already got four violent felonies on his record, what difference does it make?

I just was a little bit taken aback by that recommendation compared to what you're asking for here.

MR. COURTNEY:  I certainly understand the Court's sentiment.  I think part of the thought process that went into that was the fact that he received a 12-year sentence that was an outgrowth of this conduct.  The other part was just --

THE COURT:  I mean, presumably it's an outgrowth

29

in the sense that, yeah, he used at least one of those guns to assault somebody, but what about the other seven. I assume he sold them.  I mean, he did what you've accused, you know, Mr. Minor of in a lesser quantity, presumably. Obviously it's got to be lesser, but I just -- I was very vexed and didn't understand what I saw as a substantial inconsistency and essentially was a paper cut for Mr. Willis, who is a bad dude.

MR. COURTNEY:  I understand.

THE COURT:  Okay.

MS. MULLIN:  Your Honor, I just have a quick response to the Court's question about the JSIN.

So as I indicated earlier, we have information from the Sentencing Resource Counsel, there's a spreadsheet and our paralegal filtered the spreadsheet to obtain all the (a)(1)(A) convictions.

THE COURT:  I see.

MS. MULLIN:  Yeah.

THE COURT:  So there's a database.

MS. MULLIN:  An additional resource that we have that he was able to get those cases.

THE COURT:  Okay.  Great.  Thank you. I appreciate that.

MS. MULLIN:  Thank you.

THE COURT:  Okay.  Would Mr. Minor like to be

30

heard?

THE DEFENDANT: Yes.

THE COURT: Why don't you come on up?

MS. MULLIN: Can he bring his phone up? His statement is on his phone.

THE COURT: As long as the Marshal is okay with that.

It's fine by me. Yeah, come on up.

THE DEFENDANT: Your Honor, first I'd like to thank you for giving me the opportunity to speak.

I want start off why saying that I am remorseful for my actions. Again, regretful for my actions. I became someone almost unrecognizable. I was only in it for the money, but, like I said, I don't want to step on anyone's toes here, but I did stop voluntarily three months prior to the ATF's initial investigation. So I kind of got of sense of what I was doing and what was wrong. Long before even they got it, I had stopped.

I did buy that one for my birthday and that's when they pulled me over.

Earlier this year, I followed a story of three teenagers, who bombarded a school bus, a public school bus, and tried to execute a 14-year-old, a kid, and it shook me to my core because this took place in Prince George's County., I don't know if you've heard of it, but it was

someone tried to take this kid's life with a firearm.  And I think, you know, it hurt me because that could have been one of my guns, my guns could have been responsible for taking the life of a kid trying to get an education.  And, you know, that's why I did stop voluntarily and I have been working with the ATF ever since to get the guns off the street.

But that doesn't make my actions excusable. I take full responsibility for that.

I have learned from the situation, I have grown from the situation.  As he stated, I have been working the last 18 months -- or, excuse me, the last 11 months since the arrest.

I have been on the straight and narrow.

I was diagnosed with cellulitis.  I am happy to announce that I was cleared to go back to work.  Domino's wants me to start tonight, and I do have another interview on Sunday at noon.

And like she was saying, a prison sentence would just derail all the progress I've made.  I've been on pretrial for 11 months without a single infraction, and I feel like all of that would just be, that would be derailed.

I think that's pretty much it, Your Honor.

THE COURT:  Okay.  Thank you very much, Mr. Minor.

THE DEFENDANT:  You're welcome.

THE COURT:  All right.  Unless there's anything else, I'm going to take a few minutes and I'll be back. Thank you, everyone.

COURTROOM DEPUTY:  All rise.

This Court stands in recess.

(Recess from 9:47 a.m. to 10:03 a.m.)

THE COURT:  Please be seated.  Thank you, everyone.

All right.  I'll just reiterate the Guidelines range is 30 to 37 months.

In addition to the Guidelines, I must consider all the factors that are set forth in 18 U.S.C. 3553(a) and impose a sentence that's sufficient but not greater than necessary to achieve the objectives of sentencing set forth in the statute.

The factors I must consider are the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence, to protect the public, provide the defendant with needed educational, vocational training or medical care.  I also should consider the kinds of sentences available, as well as the need to avoid unwarranted disparities.

Just beginning with the nature and circumstances of the offense, Mr. Minor was involved in the trafficking of firearms over a period of time from April 2021 through October of 2021 when he made purchases of over 30 firearms from three different gun shops in Maryland.  All but two of those guns were re-sold to at least his cousin and perhaps others.

Mr. Willis, who is his co-defendant in this case, had a significant prior criminal record, multiple prior violent offenses, and it's not clear to the extent to which Mr. Minor was aware of all those details, but, even by his own admission, I think he understood that what he was doing was facilitating guns ending up in the hands of criminals, people with criminal records who otherwise couldn't walk into a gun shop and buy a weapon legally like he was doing.

He did stop before he was ever interviewed by ATF. The last purchase was in October of 2021.  His first ATF, I think it's with ATF, interview was in December of 2021. All of this ends up coming back to him because of Mr. Willis' conduct in which he used one of the guns to assault others.

Defense has emphasized that the conduct began because of financial difficulties as a result of the pandemic.  His cousin's influence on him to make the purchases and, again, emphasizes that he ceased purchasing

34

weapons before he was interviewed by law enforcement.

In terms of the history and characteristics of Mr. Willis -- excuse me, Mr. Minor, he's 31 years old, father was not present in his life.  He's a high school graduate, some post-graduate certifications.  Has had steady employment, online business that he started during the pandemic.  During the course of pretrial release, he's been employed consistently and until recently, because of health troubles; primary caretaker of his elderly mother.  Defense has emphasized the impact that a period of incarceration will have on her.  He does have some health problems, although I do not think they're health problems that couldn't be treated in an incarceral setting.

This is his first felony conviction.  He has not had any problems on pretrial release.

The government has emphasized the need for general deterrence; I've taken that into account.

Defense, as I pointed out, has suggested that general deterrence is better achieved by the prospect of getting caught rather than punishment itself.  But as I said earlier, I'm not quite sure how that translates for purposes of sentencing.

I agree with the defense that specific defense -- excuse me, specific deterrence is not necessary here. I don't think there's much of a risk of re-offending by

35

Mr. Minor.

Obviously he does suffer collateral consequences from a felony conviction that are significant.

In terms of disparities, I've taken into account the statistics that have been provided by the defense, which do suggest a large percentage of sentences for this particular offense have received below-Guidelines sentences. Of the particular seven that have been identified by the defense that involve 922(a)(1)(A) and Criminal History I, Offense Level 19, you know, it's not a terribly robust sample size, and I don't know how useful they are in the sense that you can extrapolate a fair amount, and only two of the sentences involve 5K1 departures. Another person received a below-Guidelines sentence because the person was 66 years old. Three others received below-Guidelines sentences for a variety of reasons, and one was Guidelines compliant, so there's a variety of reasons for the way it comes out.

In terms of the seriousness of the offense and respect for the law and provide just punishment, I think this is really serious conduct, I really do. I mean, I don't think there's any real way to sugar coat it.

We have a gun violence problem in the country, particularly in this area. And it's not fair, don't get me wrong, I don't think it's fair to Mr. Willis that we're

sitting here talking about bigger macro problems in the country when it comes to guns.  That's fair.

On the other hand, people who are doing what he was doing contribute to the problem.  You know, there are a dozen guns in the hands of people who should not have them, I'm not going to say who otherwise wouldn't have them because the odds are they would have gotten them in some other way, because there's so many guns out there anyway. But it's one part of a bigger problem.

And regrettably, Mr. Willis, you've, you know -- excuse me, Mr. Minor, you've contributed to it.

And so the conduct is serious, and I do think the sentence ought to reflect the seriousness of that conduct. I do think there's a general deterrent quality to it, particularly for people who -- the nature of the offense here is committed by somebody who has no prior criminal history, because they are able to walk into gun shops and buy these guns and then sell them out on the street.

So, you know, there is, I think, a greater impact or general deterrence by jail sentences than there would be for other types of offenses -- or other types of offenders, potential offenders, let me put it that way.

You know, Ms. Mullin, I'm not sure I could agree with you more in terms of the overall question of, is this equitable.  You know, let's just start with what the

37

government is doing with Mr. -- with the co-defendant.

I haven't sentenced him yet, but the way that Mr. Willis is getting treated relative to Mr. Minor makes absolutely no sense to me.  Sure, he wasn't the one that walked into the stores, but he's as every bit responsible as Mr. Willis -- Mr. Minor is for these guns ending up where they've ended up, if not more so, because presumably, you know, Mr. Minor here doesn't know who the next person to sell them is to, and yet he's getting essentially something that's a big nothing burger for somebody who has got four prior violent convictions.

What sense does it make that a gun shop can sell 25 plus weapons to someone without incurring any consequence.  I mean, you can't walk into a bar and sell an excessive amount of alcohol to one person and not be subject to some liability.  It's not fair.  It is not fair, and I can't agree with that sentiment more.

I had a case, and I referred to it earlier, in which the exact same facts have played out.  I can't identify the defendant and I can't identify the case number because it's under seal.  But the facts are quite similar. Somebody without any prior criminal history went out to Virginia, bought over 30 weapons, over a very short period of time, it was only about 30 days, from gun shows and gun shops, and came back into the District, they were re-sold.

38

That case actually involved, as I said, the same amount of weapons. The person's Guidelines were higher because there was obliterated serial numbers involved in that case, and she cooperated and she got a time-served sentence of 18 months.

I think Mr. Minor's very similarly situated. There's no 5K involved here, but, nevertheless, Mr. Minor has given multiple interviews with law enforcement, he has cooperated to the extent that he is able. Perhaps it wasn't useful to the government to offer him a 5K because, you know, his codefendant already was serving 12 years, but I don't think that ought to be dispositive.

But I also don't think it's fair that she ended up serving time for what's similar conduct.

The sentence of the Court will be as follows:

Mr. Minor will be committed to the custody of the Bureau of Prisons for a term of 18 months on Count 1. That less-than-Guidelines-Range sentence is for all the reasons I've just discussed; to avoid unwarranted disparities, because of Mr. Minor's rehabilitation and last 18 months on pretrial release, being the two primary reasons.

You will be sentenced to -- ordered to serve a 24-month period of supervised release.

In addition, you'll be ordered to pay a special assessment of $100.

While on supervision, you shall abide by the following mandatory conditions, as well as the discretionary conditions that are recommended by the Probation Office in Part D of the sentencing options that are identified in the Presentence Investigation Report.  Those are imposed to establish basic expectations for your conduct while on supervision.  Mandatory conditions include not committing another federal, state, or local crime, not -- you may not unlawfully possess a controlled substance.  You must refrain from any unlawful use of a controlled substance, and you must submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter.

You must cooperate in the collection of DNA as directed by the Probation Office.

Special condition of your supervised release will be performing 100 hours of community service.

While you're on supervision, the Probation Office will supervise your participation in the program by approving the program.

And you must provide written verification of completed hours.

I also will ask Probation to notify me within 30 days of your release, Mr. Minor, for a re-entry hearing.  This won't be the last time you see me, sir.  You'll come back.  We'll do -- want to make sure that you get the

40

resources that you think you need to get back on your feet, and that's the reason we have those hearings, to make sure that that is being offered to you and that you're able to reintegrate yourself into the community.

The Court finds that you don't have the ability to pay a fine and, therefore, waives the imposition of the fine in this case.

The financial obligations, that is, the $100, is immediate payable to the Clerk of the Court for the U.S. District Court at 333 Constitution Ave. Northwest.

Within 30 days of any change of address, you shall notify the Clerk of the Court of the change until such time as the financial obligation is paid in full.

You are ordered to forfeit any property that is constituted or derived from or any proceeds obtained as a result of the offense; that is, the firearms that are listed in the plea agreement.

Have I signed an Order of Forfeiture for those?

MR. COURTNEY:  I'm not certain.

THE COURT:  Okay.  All right.  Can we just make sure that's submitted to me so I can sign that?

Probation Office has the authority to release the Presentence Investigation Report to all appropriate agencies, which include the U.S. Probation Office in the approved district of residence in order to execute the

sentence of the Court.  If necessary, any treatment agencies shall return the Presentence Investigation Report to the Probation Office upon the completion or termination of treatment.

You are permitted to appeal your sentence and the conviction, Mr. Minor, if you believe there's a basis to do so.  You shall file a notice of appeal within 14 days.  You have preserved your right to appeal any sentence that's above the statutory maximum Guidelines or -- excuse me, above the statutory maximum or above the Guidelines Range, as well as to raise any claim of ineffective assistance of counsel either in connection with your plea or in connection with appeal.

Also pursuant to United States Code 28 U.S.C. 2255, you have the right to challenge the conviction that's been entered or the sentence imposed to the extent permitted by that statute.

If you decide to file an appeal and you cannot afford the cost of an appeal, you can ask the permission of the Court to file an appeal without cost to you.  And if you cannot afford a lawyer for purposes of such an appeal, you may request the appointment of court-appointed counsel.

All right.  That will be the sentence of the Court.

Are there any objections or anything else that

42

would like to be placed on the record at this point?

MR. COURTNEY:  Not from the government.

MS. MULLIN:  No, Your Honor.

THE COURT:  All right.

I will let Mr. Minor continue on the conditions of release and self-surrender.  I do not believe he poses a threat to the community given his absence of any criminal history and the absence of any violations on pretrial release.  He is employed, he is taking care of his mother, and I think it's warranted that he be permitted to self-surrender.

Mr. Minor, good luck to you, sir.  We'll see you soon, okay.

THE DEFENDANT:  Thank you.

COURTROOM DEPUTY:  All rise.

This Court stands in recess.

(Proceedings concluded at 10:20 a.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__October 18, 2023_____    __________

William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [4]** 3/2 3/6 32/4 42/15
**MR. COURTNEY: [20]** 3/20 4/6 4/16 6/1 6/3 7/21 8/3 8/21 12/20 14/1 14/5 14/12 17/8 27/9 27/16 27/22 28/20 29/9 40/19 42/2
**MS. MULLIN: [25]** 3/19 4/7 4/12 4/17 4/22 5/5 14/25 17/4 17/10 18/14 20/1 20/13 21/10 21/19 23/6 23/20 24/2 24/13 24/23 29/11 29/18 29/20 29/24 30/4 42/3
**THE COURT: [45]**
**THE DEFENDANT: [6]** 3/16 5/4 30/2 30/9 31/25 42/14

**$**

**$10,000 [1]** 5/23
**$100 [2]** 38/25 40/8
**$100,000 [1]** 5/23

**-**

**-2 [1]** 4/3
**-3 [1]** 4/3

**1**

**100 [1]** 39/16
**101 [1]** 12/15
**10:03 [1]** 32/6
**10:20 [1]** 42/17
**11 [2]** 31/12 31/21
**12 [2]** 5/17 38/11
**12-year [2]** 8/12 28/22
**14 [1]** 41/7
**14-year-old [1]** 30/23
**15 [2]** 11/14 39/11
**1719 [1]** 1/16
**18 [9]** 11/13 15/10 15/12 15/22 20/15 31/12 38/17 38/20 43/7
**18 months [1]** 38/5
**18 U.S.C [1]** 32/12
**19 [2]** 5/21 35/10
**1996 [1]** 9/21

**2**

**20001 [1]** 2/6
**20004 [1]** 1/20
**202 [3]** 1/16 1/20 2/6
**2021 [4]** 33/3 33/4 33/17 33/18
**2022 [1]** 11/10
**2023 [2]** 1/5 43/7
**20530 [1]** 1/15
**208-7500 [1]** 1/20
**21 [3]** 1/5 7/11 8/8
**22 [3]** 5/13 5/19 12/15
**22-401-1 [2]** 1/4 3/7
**2255 [1]** 41/15
**24-month [1]** 38/23
**25 [3]** 5/13 16/7 37/13

**28 [2]** 12/15 41/14
**2K2.1 [2]** 5/12 23/24

**3**

**30 [8]** 5/23 7/18 13/20 16/23 20/22 32/10 33/4 37/23
**30 days [3]** 37/24 39/23 40/11
**31 [2]** 13/20 34/3
**32 [2]** 8/5 8/18
**3249 [1]** 2/6
**333 [2]** 2/5 40/10
**354-3249 [1]** 2/6
**3553 [1]** 32/12
**37 [4]** 5/23 6/4 28/10 32/10
**37-month [2]** 10/20 13/1

**4**

**4473 [1]** 7/12

**5**

**500 [1]** 1/19
**58 [1]** 3/24
**59 [1]** 3/25
**5H1.4 [3]** 9/13 9/22 9/25
**5K [2]** 38/7 38/10
**5K1 [1]** 35/13
**5Ks [1]** 12/6

**6**

**60 [1]** 4/1
**601 [1]** 1/15
**61 [1]** 4/2
**61-1 [1]** 4/3
**62 [1]** 4/4
**625 [1]** 1/19
**63 [1]** 4/4
**66 [1]** 35/15
**68 [1]** 4/22

**7**

**70 [1]** 12/16
**70 percent [1]** 12/17
**7500 [1]** 1/20

**9**

**922 [2]** 24/3 35/9
**933 [1]** 11/13
**99 [1]** 5/13
**9:06 [1]** 1/6
**9:47 [1]** 32/6

**A**

**a.m [4]** 1/6 32/6 32/6 42/17
**aback [1]** 28/18
**abide [1]** 39/1
**ability [1]** 40/5
**able [12]** 8/19 10/18 12/21 16/8 16/21 23/20 25/20 25/25 29/21 36/17 38/9 40/3
**about [14]** 5/1 12/18 13/8 14/9 18/6 22/12

29/2 29/12 36/1 37/24
**above [4]** 41/9 41/10 41/10 43/4
**above-titled [1]** 43/4
**absence [7]** 10/24 12/23 13/19 14/1 27/12 42/7 42/8
**absolutely [1]** 37/4
**accept [1]** 27/25
**acceptable [2]** 11/4 19/22
**acceptance [1]** 15/8
**accepted [2]** 5/20 15/3
**access [1]** 12/22
**account [3]** 14/7 34/17 35/4
**accused [1]** 29/3
**achieve [1]** 32/14
**achieved [1]** 34/19
**act [2]** 11/11 14/17
**acting [1]** 19/7
**actions [3]** 30/12 30/12 31/8
**actually [3]** 5/2 12/13 38/1
**added [3]** 5/14 5/15 5/18
**addiction [1]** 25/5
**addition [2]** 32/11 38/24
**additional [6]** 4/4 4/18 5/19 6/9 11/21 29/20
**additions [1]** 5/9
**address [2]** 4/20 40/11
**addressing [1]** 15/1
**adept [1]** 23/13
**adequate [1]** 32/21
**adjusted [1]** 5/19
**admission [1]** 33/12
**admit [1]** 23/8
**admitted [2]** 6/20 17/12
**adult [1]** 6/19
**affected [1]** 6/24
**afford [3]** 32/21 41/19 41/21
**after [4]** 4/18 11/10 15/12 21/25
**again [10]** 12/9 24/13 25/3 25/16 25/24 26/3 26/9 26/18 30/12 33/25
**against [1]** 15/7
**agencies [2]** 40/24 41/1
**agency [1]** 6/19
**ago [4]** 15/10 15/12 15/22 20/15
**agree [5]** 21/22 21/22 34/23 36/23 37/17
**agreement [3]** 9/16 15/5 40/17
**ahead [1]** 27/21
**aid [3]** 4/1 4/2 22/3
**aided [1]** 2/8
**alcohol [1]** 37/15
**all [32]** 3/2 3/14 3/21 4/9 4/13 4/14 5/8 13/3

21/11 25/16 26/22 27/1 29/15 31/20 31/22 32/1 32/4 32/9 32/11 33/5 33/11 33/19 38/18 40/20 40/23 41/23 42/4 42/15
**All right [2]** 3/21 32/1
**allocated [1]** 17/3
**allocution [3]** 5/25 11/25 15/2
**allow [2]** 23/15 26/14
**almost [2]** 19/5 30/13
**already [4]** 25/15 28/14 28/15 38/11
**also [12]** 5/6 6/23 12/14 15/18 16/17 16/25 17/21 26/19 32/23 38/13 39/22 41/14
**although [1]** 34/12
**always [3]** 15/16 16/18 27/18
**am [4]** 4/5 17/15 30/11 31/15
**AMERICA [2]** 1/3 3/7
**AMIT [2]** 1/10 3/3
**Amit P [1]** 3/3
**among [1]** 12/25
**amount [4]** 13/5 35/12 37/15 38/1
**Ann [1]** 1/17
**announce [1]** 31/16
**another [4]** 8/17 31/17 35/13 39/8
**answer [2]** 7/21 26/15
**any [20]** 7/18 12/14 12/23 15/6 20/16 25/24 34/15 35/22 37/13 37/22 39/10 40/11 40/14 40/15 41/1 41/8 41/11 41/25 42/7 42/8
**anybody [1]** 21/5
**anyone [1]** 20/18
**anyone's [1]** 30/14
**anything [5]** 4/5 4/14 22/15 32/1 41/25
**anyway [2]** 28/7 36/8
**appeal [8]** 41/5 41/7 41/8 41/13 41/18 41/19 41/20 41/21
**APPEARANCES [2]** 1/12 2/1
**appearing [1]** 3/12
**appears [2]** 6/12 10/17
**applicable [1]** 5/12
**appointed [1]** 41/22
**appointment [1]** 41/22
**appreciate [2]** 6/12 29/23
**approach [1]** 27/10
**appropriate [2]** 14/14 40/23
**approved [1]** 40/25
**approving [1]** 39/19
**April [1]** 33/3
**are [35]** 3/18 5/9 5/14 5/15 5/17 6/8 7/22 9/2

23 10/8 10/14 11/22 12/18 13/13 14/18 19/6 19/7 19/16 21/12 32/12 32/16 35/3 35/11 36/3 36/4 36/7 36/17 37/21 39/3 39/4 39/5 40/14 40/16 41/5 41/25
**area [2]** 11/6 35/24
**argument [1]** 24/25
**arguments [3]** 6/8 10/3 15/6
**arrest [1]** 31/13
**arsenal [1]** 8/2
**as [36]** 6/3 6/6 11/14 11/23 12/10 13/14 15/7 15/7 18/20 21/20 22/17 22/18 24/25 25/3 27/23 29/6 29/13 30/6 30/6 31/11 32/24 32/24 33/23 34/18 34/20 37/5 37/5 38/1 38/15 39/2 39/2 39/13 40/13 40/15 41/11 41/11
**ask [13]** 4/9 7/15 11/24 15/5 15/25 16/20 23/3 24/10 24/21 26/24 27/3 39/22 41/19
**asking [4]** 9/15 19/23 28/10 28/19
**assault [5]** 8/11 18/1 18/5 29/2 33/21
**assessment [1]** 38/25
**assistance [1]** 41/11
**associate [5]** 16/25 17/5 17/5 17/14 17/19
**assume [3]** 9/14 10/12 29/3
**asthma [3]** 9/18 9/25 10/8
**ATF [5]** 8/1 31/6 33/16 33/17 33/18
**ATF's [1]** 30/16
**attached [2]** 4/3 26/23
**Attorney's [1]** 1/14
**authority [1]** 40/22
**available [6]** 7/3 7/4 16/1 24/11 25/7 32/24
**Ave [1]** 40/10
**Ave,NW [1]** 1/19
**Avenue [1]** 2/5
**avoid [2]** 32/25 38/19
**aware [1]** 33/11
**away [3]** 22/10 22/13 25/12

**B**

**back [11]** 5/1 13/22 18/25 25/20 26/9 31/16 32/2 33/19 37/25 39/25 40/1
**bad [1]** 29/8
**Baker [2]** 2/2 3/11
**balancing [1]** 13/24
**Band [1]** 22/3
**Band-Aid [1]** 22/3
**bar [1]** 37/14
**barred [1]** 9/16
**Barrett [1]** 2/5

**B**

Base [2] 5/12 5/17
based [4] 9/18 10/2 13/10 15/23
basic [1] 39/6
basically [1] 4/25
basis [3] 10/5 16/3 41/6
be [46]
became [2] 4/24 30/12
because [40] 5/13 5/14 6/20 7/9 8/9 8/10 8/16 9/1 9/13 9/15 12/10 13/5 14/18 16/21 18/24 19/9 19/12 20/8 21/3 22/10 22/19 23/24 24/8 24/15 25/20 25/25 30/24 31/2 33/19 33/23 34/8 35/14 36/7 36/8 36/17 37/7 37/21 38/2 38/10 38/20
been [25] 7/2 8/19 8/23 12/9 13/21 15/14 15/18 15/21 18/16 20/6 21/7 22/18 25/21 27/8 27/18 31/2 31/3 31/5 31/11 31/14 31/20 34/7 35/5 35/8 41/16
before [8] 1/10 4/14 11/20 19/8 27/2 30/17 33/16 34/1
began [1] 33/22
begin [2] 3/22 5/24
beginning [1] 33/1
behalf [1] 3/11
being [7] 14/6 15/13 19/17 19/18 21/23 38/21 40/3
believe [2] 41/6 42/6
believes [1] 11/18
below [3] 35/7 35/14 35/15
below-Guidelines [3] 35/7 35/14 35/15
better [2] 26/10 34/19
big [2] 7/3 37/10
bigger [2] 36/1 36/9
bill [1] 26/13
bipartisan [1] 11/11
birthday [1] 30/19
bit [4] 9/23 28/9 28/18 37/5
black [2] 16/10 21/19
blame [3] 6/13 6/15 7/7
blip [1] 8/7
bombarded [1] 30/22
BOP [2] 10/9 10/13
both [3] 3/18 6/6 27/4
bottom [1] 12/6
bought [5] 8/1 16/5 16/6 28/12 37/23
bout [1] 10/18
boyfriend [1] 19/12
break [2] 24/4 24/19
brief [2] 10/18 24/4
bring [1] 30/4
broader [1] 12/14
brother [2] 16/13 25/11

Bureau [1] 38/17
burger [1] 37/10
bus [2] 30/22 30/22
business [2] 22/8 34/6
buy [7] 7/18 9/7 11/2 16/8 30/19 33/15 36/18

**C**

calculations [2] 5/11 13/6
call [2] 12/4 24/5
called [1] 26/6
came [4] 11/25 15/17 23/10 37/25
can [28] 4/9 4/20 5/8 7/16 10/8 11/1 16/20 17/15 17/22 20/15 21/3 22/6 23/3 23/21 24/8 24/9 24/9 24/9 26/3 26/13 27/3 27/24 30/4 35/12 37/12 40/20 40/21 41/19
can't [14] 11/4 15/25 17/23 19/22 20/25 22/7 22/8 22/19 26/1 26/18 37/14 37/17 37/19 37/20
cannot [2] 41/18 41/21
car [1] 17/25
care [2] 32/23 42/9
caretaker [3] 15/18 22/14 34/9
carry [2] 26/13 26/14
case [20] 3/7 10/17 10/24 11/11 11/12 13/10 13/21 14/11 19/12 19/13 23/1 24/15 26/5 27/12 33/8 37/18 37/20 38/1 38/3 40/7
cases [9] 12/5 12/15 12/16 12/24 13/8 22/22 22/22 23/10 29/21
category [3] 12/3 12/3 14/3
caught [8] 8/9 8/10 11/2 14/18 20/5 20/6 20/11 34/20
cause [2] 17/22 21/12
caused [3] 11/5 17/24 26/18
causes [2] 22/4 26/20
ceased [2] 15/12 33/25
cellulitis [4] 4/25 5/7 10/18 31/15
central [2] 7/23 7/25
certain [1] 40/19
certainly [4] 10/15 21/8 22/17 28/20
certifications [1] 34/5
Certified [1] 2/4
certify [1] 43/2
certifying [1] 7/12
CH [1] 2/5
challenge [1] 41/15
change [2] 40/11 40/12
character [1] 19/7
characteristic [1] 9/10
characteristics [2]

characterization [1] 16/15
chose [2] 6/19 7/1
chosen [1] 14/21
Circuit [1] 10/4
Circuit's [1] 9/19
circumstance [1] 21/2
circumstances [6] 12/24 13/9 13/10 16/5 32/17 33/1
circumstantial [1] 27/12
circumstantially [1] 27/25
claim [1] 41/11
clear [2] 5/6 33/10
cleared [1] 31/16
clearly [2] 18/25 21/8
Clerk [2] 40/9 40/12
client [2] 18/11 18/24
close [2] 16/12 16/17
clued [1] 14/18
co [3] 8/12 33/8 37/1
co-defendant [3] 8/12 33/8 37/1
coat [1] 35/22
Code [2] 11/13 41/14
codefendant [1] 38/11
collateral [1] 35/2
collected [1] 12/10
collection [1] 39/13
COLUMBIA [2] 1/1 1/18
come [6] 23/6 23/21 24/5 30/3 30/8 39/24
comes [7] 23/3 23/7 25/14 25/15 25/19 35/18 36/2
coming [1] 33/19
commission [2] 13/12 24/10
Commission's [1] 12/21
commit [1] 14/22
committed [2] 36/16 38/16
committing [1] 39/7
common [1] 10/14
Communities [1] 11/11
community [10] 11/18 13/14 19/2 20/21 22/6 22/16 25/23 39/16 40/4 42/7
comparables [1] 11/23
compared [1] 28/19
comparisons [1] 13/7
completed [1] 39/21
completion [1] 41/3
compliant [1] 35/17
complications [1] 10/11
computer [1] 2/8
computer-aided [1] 2/8
concerned [1] 14/9
concluded [1] 42/17
concurrent [2] 28/10

condition [4] 9/14 15/24 16/2 39/15
conditions [6] 10/8 10/15 39/2 39/3 39/7 42/5
conduct [31] 5/13 5/14 5/18 6/6 6/13 6/17 6/19 8/7 10/16 11/10 11/12 13/18 13/24 15/4 15/9 15/12 15/20 19/4 20/15 21/8 21/25 22/6 22/17 28/23 33/20 33/22 35/21 36/12 36/13 38/14 39/6
conduit [1] 19/19
confer [1] 17/8
conferred [1] 17/9
confinement [1] 26/8
confirm [1] 4/10
Congress [3] 11/7 11/17 26/14
connection [3] 19/19 41/12 41/12
consequence [1] 37/14
consequences [1] 35/2
consider [4] 19/25 32/11 32/16 32/23
considers [1] 11/17
consistently [1] 34/8
constituted [1] 40/15
Constitution [2] 2/5 40/10
constitutional [2] 21/21 26/12
context [1] 16/18
continue [2] 10/19 42/5
CONTINUED [1] 2/1
contribute [1] 36/4
contributed [1] 36/11
controlled [2] 39/9 39/10
conversation [3] 7/20 18/6 18/10
conversations [1] 27/17
conviction [10] 12/13 22/10 23/16 23/19 25/16 25/21 34/14 35/3 41/6 41/15
convictions [3] 23/24 29/16 37/11
convince [1] 21/3
cooperate [1] 39/13
cooperated [2] 38/4 38/9
copy [1] 9/21
core [1] 30/24
correct [3] 8/3 17/15 43/3
corrected [1] 17/11
correction [1] 4/18
corroborates [1] 27/23
cost [2] 41/19 41/20
could [17] 7/15 9/24

12 17/17 18/2 18/10 18/19 22/13 24/5 26/1 28/1 28/2 28/2 28/3 31/2 31/3 36/23
couldn't [4] 9/7 23/5 33/14 34/13
counsel [11] 3/14 10/3 11/20 17/9 17/11 23/8 23/11 27/3 29/14 41/12 41/22
count [2] 8/6 38/17
Count 1 [1] 38/17
country [2] 35/23 36/2
County [1] 30/25
couple [3] 11/20 24/16 24/18
course [9] 7/17 8/7 15/21 17/22 18/2 20/17 22/1 22/5 34/7
court [39] 1/1 2/3 2/4 3/2 4/20 9/13 9/17 9/19 10/1 10/3 10/7 10/7 14/13 14/14 15/5 15/6 15/10 15/15 16/2 16/2 21/3 23/21 23/22 24/4 24/5 26/24 27/23 28/15 32/5 38/15 40/5 40/9 40/10 40/12 41/1 41/20 41/22 41/24 42/16
Court's [2] 28/20 29/12
court-appointed [1] 41/22
Courtney [2] 1/13 3/9
courtroom [1] 24/6
cousin [10] 16/10 16/12 16/16 17/14 17/16 18/14 18/16 19/13 27/15 33/6
cousin's [1] 33/24
covered [1] 25/1
covers [1] 23/25
CR [1] 1/4
crazy [1] 26/15
crime [12] 9/1 10/23 13/12 14/15 14/16 14/21 14/21 17/24 18/20 18/21 18/21 39/8
crimes [2] 9/2 19/19
criminal [22] 3/7 5/22 6/16 10/24 12/3 12/12 13/19 14/1 14/5 18/12 18/24 19/6 19/17 19/21 21/1 23/17 33/9 33/14 35/9 36/16 37/22 42/7
criminal record [1] 33/9
criminals [3] 16/16 18/3 33/13
CRR [2] 43/2 43/8
cull [1] 23/8
curiosity [1] 7/16
curious [3] 12/18 24/7 24/19
current [2] 6/17 16/22
custodial [2] 10/21 10/25
custody [2] 13/3 38/16
cut [1] 29/7

**D**

**D.C [5]** 1/5 1/15 1/20 2/6 26/14
**dangerous [1]** 9/6
**data [8]** 11/25 12/11 12/22 23/2 23/8 23/12 26/4 26/6
**database [4]** 7/23 8/1 8/4 29/19
**Date [1]** 43/7
**day [2]** 13/14 16/22
**days [5]** 37/24 39/11 39/23 40/11 41/7
**December [1]** 33/18
**decide [1]** 41/18
**decision [3]** 9/20 9/21 9/24
**deems [1]** 14/14
**defendant [12]** 1/7 1/17 3/12 6/12 8/12 9/12 10/3 32/18 32/22 33/8 37/1 37/20
**defendant's [1]** 4/1
**defendants [1]** 19/7
**defender [2]** 1/18 15/7
**defense [11]** 3/10 4/8 7/6 19/18 33/22 34/9 34/18 34/23 34/23 35/5 35/9
**defense's [2]** 6/11 10/9
**definition [2]** 13/19 19/5
**deflect [1]** 6/13
**degree [1]** 19/14
**delivering [1]** 5/2
**delivery [2]** 7/2 7/5
**DEMETRIUS [2]** 1/6 3/8
**depart [2]** 9/13 9/17
**departure [5]** 9/16 10/2 10/5 15/25 16/3
**departures [1]** 35/13
**derail [2]** 15/20 31/20
**derailed [1]** 31/22
**derailing [1]** 20/16
**derived [1]** 40/15
**destitute [1]** 25/15
**details [1]** 33/11
**deter [1]** 20/17
**deterred [2]** 22/18 22/19
**deterrence [12]** 6/7 10/22 20/2 22/16 22/17 25/1 25/2 32/21 34/17 34/19 34/24 36/20
**deterrent [1]** 36/14
**deters [1]** 20/4
**diagnosed [2]** 4/25 31/15
**diagnosis [1]** 5/7
**did [13]** 8/5 9/7 12/25 18/14 23/8 23/22 24/16 26/5 29/3 30/15 30/19 31/5 33/16
**didn't [4]** 10/16 13/4 24/11 29/6
**difference [1]** 28/16
**different [7]** 7/17 16/7

23/24 33/5
**differently [1]** 9/22
**difficult [4]** 8/24 18/23 19/24 21/2
**difficulties [1]** 33/23
**difficulty [2]** 27/9 27/11
**diploma [1]** 25/6
**direct [1]** 9/19
**directed [1]** 39/14
**direction [2]** 19/1 19/1
**directly [1]** 27/6
**discretionary [1]** 39/2
**discussed [2]** 4/10 38/19
**disparities [3]** 32/25 35/4 38/19
**disparity [1]** 26/8
**dispositive [1]** 38/12
**district [8]** 1/1 1/1 1/10 1/18 10/1 37/25 40/10 40/25
**DNA [1]** 39/13
**do [21]** 7/1 9/7 10/10 19/2 19/22 21/2 22/8 22/9 22/24 23/20 26/1 28/6 31/17 34/12 35/6 35/21 36/12 36/14 39/25 41/6 42/6
**doctor [1]** 10/7
**does [12]** 11/25 13/16 13/23 14/2 22/15 23/22 26/16 26/24 28/16 34/11 35/2 37/12
**doesn't [11]** 12/12 20/25 21/15 21/16 22/24 23/15 24/25 25/5 27/25 31/8 37/8
**doing [9]** 7/2 14/19 19/10 30/17 33/12 33/15 36/3 36/4 37/1
**DOJ [1]** 1/13
**DOJ-USAO [1]** 1/13
**Domino's [3]** 5/3 25/18 31/16
**don't [33]** 5/24 7/21 7/25 8/21 14/20 18/9 18/15 18/16 19/21 20/11 20/14 21/5 21/15 21/21 21/22 21/22 22/6 22/11 22/12 22/15 23/12 28/3 30/3 30/14 30/25 34/25 35/11 35/22 35/24 35/25 38/12 38/13 40/5
**done [2]** 18/7 24/8
**down [3]** 11/20 12/13 23/18
**downward [6]** 9/13 9/16 9/18 10/2 15/25 16/3
**dozen [1]** 36/5
**dramatic [1]** 22/11
**draw [1]** 13/7
**drill [1]** 12/12
**drug [3]** 25/5 39/11 39/12

**during [3]** 7/5 34/6 34/7

**E**

**each [3]** 7/11 24/14 26/5
**earlier [5]** 19/12 29/13 30/21 34/21 37/18
**earning [1]** 25/12
**easy [2]** 6/18 14/17
**eat [1]** 7/4
**ECF [1]** 4/4
**education [1]** 31/4
**educational [1]** 32/22
**eight [2]** 16/23 28/2
**either [2]** 20/12 41/12
**elderly [1]** 34/9
**elizabeth [3]** 1/17 1/21 3/10
**else [3]** 19/11 32/2 41/25
**Email [2]** 1/16 1/21
**emailed [1]** 23/21
**emotional [1]** 22/12
**emphasized [3]** 33/22 34/10 34/16
**emphasizes [1]** 33/25
**employed [3]** 15/14 34/8 42/9
**employee [1]** 15/16
**employment [1]** 34/6
**end [4]** 4/24 18/11 18/19 19/16
**ended [7]** 15/9 17/24 17/25 27/5 27/15 37/7 38/13
**ending [2]** 33/13 37/6
**ends [1]** 33/19
**enforcement [8]** 7/19 8/19 15/13 15/22 17/12 22/1 34/1 38/8
**engage [1]** 6/19
**engaged [1]** 25/24
**engaging [1]** 10/16
**enough [1]** 23/13
**entailed [1]** 18/12
**enter [1]** 20/15
**entered [1]** 41/16
**entry [1]** 39/23
**equitable [1]** 36/25
**especially [1]** 21/24
**essential [1]** 24/20
**essentially [2]** 29/7 37/9
**establish [1]** 39/6
**even [9]** 12/8 20/3 22/22 23/12 23/19 25/14 26/1 30/17 33/11
**event [1]** 12/14
**ever [2]** 31/6 33/16
**every [4]** 7/11 24/15 26/5 37/5
**everyone [6]** 3/5 6/24 6/24 6/25 32/3 32/8
**everything [2]** 3/5 6/24
**evidence [3]** 11/16 27/22 28/4
**evidentiary [1]** 10/6

**exact [2]** 27/24 27/24
**exactly [1]** 18/16
**example [2]** 23/1 24/3
**exception [2]** 10/17 12/4
**excessive [1]** 37/15
**excusable [1]** 31/8
**excuse [5]** 31/12 34/3 34/24 36/11 41/9
**execute [2]** 30/23 40/25
**Exhibit [1]** 11/23
**Exhibit A [1]** 11/23
**exhibits [1]** 4/3
**expect [1]** 23/23
**expectations [1]** 39/6
**explain [1]** 23/22
**expressed [2]** 16/11 17/16
**extension [1]** 21/11
**extent [4]** 16/20 33/10 38/9 41/16
**extrapolate [1]** 35/12

**F**

**facilitate [1]** 18/21
**facilitated [3]** 10/23 13/19 20/23
**facilitating [2]** 14/16 33/13
**fact [8]** 7/3 7/8 13/17 14/18 18/2 20/4 22/19 28/22
**factor [2]** 13/23 14/2
**factors [3]** 19/24 32/12 32/16
**facts [5]** 12/24 13/8 13/10 37/19 37/21
**factual [1]** 10/5
**fair [10]** 10/12 21/6 21/18 35/12 35/24 35/25 36/2 37/16 37/16 38/13
**fairly [1]** 10/14
**fall [1]** 11/12
**fallacy [2]** 20/19 20/20
**family [2]** 16/17 19/2
**father [1]** 34/4
**fd.org [1]** 1/21
**fed [1]** 7/25
**federal [3]** 1/18 8/4 39/8
**feel [1]** 31/22
**feet [4]** 5/1 18/25 21/24 40/1
**felon [1]** 16/16
**felonies [1]** 28/16
**felony [7]** 18/15 22/7 22/10 25/15 25/21 34/14 35/3
**female [1]** 17/5
**few [3]** 6/9 28/3 32/2
**FFL [1]** 7/24
**figure [3]** 16/13 17/2 23/4
**file [3]** 41/7 41/18 41/20
**filed [2]** 4/4 14/11

**filed [1]** 7/12
**filter [1]** 23/16
**filtered [1]** 29/15
**finally [1]** 10/20
**financial [3]** 33/23 40/8 40/13
**find [4]** 9/24 16/2 18/23 19/23
**finds [2]** 21/1 40/5
**fine [4]** 5/23 30/8 40/6 40/6
**firearm [4]** 9/4 16/11 18/4 31/1
**firearms [20]** 5/14 5/18 8/6 13/5 13/11 16/6 16/7 16/23 17/6 17/17 17/20 18/8 21/12 21/20 22/20 22/23 26/12 33/3 33/4 40/16
**first [3]** 30/9 33/17 34/14
**five [2]** 11/14 12/5
**flag [1]** 7/18
**followed [2]** 6/5 30/21
**following [1]** 39/2
**follows [1]** 38/15
**food [1]** 7/2
**foregoing [1]** 43/3
**foreseeable [3]** 18/3 18/19 21/9
**forfeit [1]** 40/14
**Forfeiture [1]** 40/18
**forgive [2]** 23/4 28/6
**form [1]** 7/12
**forth [2]** 32/12 32/14
**fortunately [1]** 8/13
**foul [1]** 28/13
**found [2]** 10/4 18/2
**four [4]** 5/15 5/18 28/15 37/10
**friend [1]** 17/13
**front [1]** 16/22
**full [3]** 15/18 31/9 40/13
**full-time [1]** 15/18
**fully [1]** 6/12
**fundamental [1]** 21/21
**further [1]** 23/19

**G**

**gainfully [1]** 15/14
**general [9]** 6/7 10/22 20/1 22/16 25/1 34/16 34/19 36/14 36/20
**George's [1]** 30/24
**get [19]** 4/15 7/25 9/1 9/1 11/3 13/22 18/25 19/15 21/3 22/6 22/24 25/20 26/3 29/21 31/4 31/6 35/24 39/25 40/1
**gets [2]** 20/24 28/4
**getting [7]** 15/11 20/4 20/11 23/18 34/20 37/3 37/9
**girlfriend [3]** 18/1 18/6 27/7
**give [2]** 14/13 24/4
**given [8]** 6/16 11/4

**given... [6]** 13/1 13/3 19/24 27/14 38/8 42/7
**giving [1]** 30/10
**go [18]** 7/19 9/7 11/1 17/6 18/5 18/7 22/7 22/8 22/19 23/13 24/8 24/9 24/24 25/25 26/5 26/9 27/21 31/16
**goals [2]** 24/24 25/1
**goes [3]** 7/19 13/14 25/13
**going [14]** 17/7 18/5 18/7 18/7 20/17 21/3 21/14 21/19 23/14 24/12 25/6 25/8 32/2 36/6
**gone [1]** 24/14
**good [11]** 3/4 3/6 3/14 3/15 3/16 6/1 6/2 7/21 19/2 25/17 42/12
**good morning [5]** 3/6 3/15 3/16 6/1 6/2
**got [9]** 13/12 24/18 28/15 28/15 29/5 30/16 30/18 37/10 38/4
**gotten [1]** 36/7
**government [21]** 1/13 3/9 4/6 4/16 6/3 8/19 9/2 13/16 13/18 13/23 15/11 17/11 17/15 17/21 17/23 26/17 27/3 34/16 37/1 38/10 42/2
**government's [8]** 3/25 5/25 8/6 13/9 15/2 16/14 25/9 28/8
**graduate [2]** 34/5 34/5
**grandmother [1]** 25/11
**granted [1]** 10/1
**gravity [1]** 11/4
**great [2]** 25/7 29/22
**greater [3]** 20/10 32/13 36/19
**group [1]** 24/16
**grown [1]** 31/10
**guess [1]** 20/13
**guideline [5]** 5/12 12/2 12/11 12/16 23/17
**Guidelines [19]** 5/10 5/22 12/7 12/16 13/2 13/4 13/6 14/2 14/7 32/9 32/11 35/7 35/14 35/15 35/16 38/2 38/18 41/9 41/10
**Guidelines Range [1]** 14/2
**Guidelines sentence [2]** 12/7 13/2
**gun [24]** 7/7 7/13 7/17 8/8 8/16 11/8 13/14 16/6 16/6 17/12 20/16 20/16 21/12 21/23 22/24 22/25 25/25 33/5 33/15 35/23 36/17 37/12 37/24 37/24
**guns [35]** 6/21 7/8 8/11 8/15 8/25 9/1 9/6 9/10 11/2 16/15 17/2 17/13

18/19 19/15 20/22 26/11 27/5 28/1 28/12 29/1 31/3 31/3 31/6 33/6 33/13 33/20 36/2 36/5 36/8 36/18 37/6
**gushing [1]** 22/3
**guy [1]** 28/15

**H**

**had [18]** 4/17 6/25 7/4 14/5 14/20 16/7 16/21 17/5 18/16 19/8 24/23 25/25 26/6 30/18 33/9 34/5 34/15 37/18
**half [1]** 19/3
**hand [2]** 18/9 36/3
**handful [1]** 8/22
**hands [6]** 16/16 18/3 19/16 27/6 33/13 36/5
**hang [1]** 5/15
**happened [1]** 17/16
**happy [2]** 24/14 31/15
**hard [3]** 12/23 13/7 15/16
**harm [13]** 8/17 9/11 11/5 17/22 17/24 21/12 21/23 22/4 26/17 26/18 26/20 26/21 28/13
**has [38]** 4/10 4/11 4/12 5/20 5/22 6/19 8/1 8/18 8/19 9/9 11/7 11/22 13/21 13/21 15/3 15/20 15/21 18/24 20/6 22/17 22/18 25/5 25/16 25/17 25/22 25/24 27/18 33/22 34/5 34/10 34/14 34/16 34/18 36/16 37/10 38/8 38/8 40/22
**hat [1]** 16/2
**have [62]**
**haven't [1]** 37/2
**he [104]**
**he'd [1]** 27/2
**he'll [3]** 25/20 25/20 25/21
**he's [22]** 5/1 5/2 14/2 14/21 15/14 15/18 16/17 18/24 20/17 22/2 22/13 22/18 25/6 25/8 25/12 27/14 28/11 34/3 34/4 34/7 37/5 37/9
**head [2]** 18/25 19/1
**health [5]** 15/19 15/24 34/8 34/11 34/12
**hear [2]** 5/11 27/2
**heard [4]** 10/7 27/3 30/1 30/25
**hearing [3]** 10/6 28/7 39/23
**hearings [1]** 40/2
**heightened [1]** 20/11
**helps [1]** 20/8
**her [4]** 11/23 11/25 22/13 34/11
**here [18]** 3/17 6/10 12/22 13/18 13/25 16/19 17/15 17/16

28/19 30/15 34/24 36/1 36/16 37/8 38/7
**high [3]** 17/12 25/5 34/4
**higher [2]** 14/6 38/2
**him [20]** 7/13 15/7 16/7 16/13 16/17 16/24 18/19 19/14 20/17 23/21 24/5 24/5 24/14 25/7 25/10 25/12 33/19 33/24 37/2 38/10
**himself [2]** 19/2 25/24
**his [61]**
**history [18]** 5/22 12/3 12/12 13/19 14/2 14/6 14/10 18/12 18/24 19/6 21/1 23/17 32/17 34/2 35/9 36/17 37/22 42/8
**home [2]** 26/7 26/7
**honest [1]** 25/12
**Honor [17]** 3/6 3/19 3/20 4/7 4/12 4/17 14/25 15/9 16/4 17/10 24/23 26/3 26/22 29/11 30/9 31/23 42/3
**HONORABLE [2]** 1/10 3/3
**hourly [1]** 25/12
**hours [2]** 39/16 39/21
**how [22]** 7/16 8/18 12/9 13/16 13/23 13/23 17/2 19/15 19/20 20/8 20/13 20/14 20/16 22/15 23/18 23/22 24/7 24/16 27/5 27/15 34/21 35/11
**hundred [1]** 24/16
**hurt [4]** 8/13 8/15 9/3 31/2
**hypertension [3]** 9/18 9/25 10/8

**I**

**I also [3]** 32/23 38/13 39/22
**I am [2]** 30/11 31/15
**I appreciate [1]** 29/23
**I ask [1]** 7/15
**I assume [1]** 29/3
**I can [6]** 4/20 11/1 21/3 24/9 26/3 40/21
**I can't [3]** 15/25 37/19 37/20
**I did [3]** 23/8 30/15 31/5
**I didn't know [1]** 24/11
**I don't [16]** 14/20 18/9 18/15 18/16 20/11 21/5 21/15 21/21 22/12 23/12 30/25 34/25 35/11 35/22 35/25 38/12
**I don't have [2]** 7/21 8/21
**I have [10]** 6/9 11/3 22/7 22/10 26/9 31/5 31/10 31/10 31/11

**I just [7]** 20/13 21/22 22/15 23/5 26/9 28/18 29/5
**I know [5]** 7/22 15/25 20/7 24/2 26/1
**I mean [29]** 12/25 14/1 14/5 14/8 14/13 16/20 17/16 18/1 18/6 18/18 19/18 20/6 20/13 21/10 21/14 21/24 22/2 22/15 24/8 24/8 24/18 25/4 25/17 28/6 28/11 28/14 29/3 35/21 37/14
**I take [1]** 31/9
**I think [21]** 14/13 15/10 16/24 18/15 20/18 20/24 21/10 22/21 24/9 26/4 27/9 27/23 28/21 31/2 31/23 33/12 33/18 35/20 36/19 38/6 42/10
**I understand [1]** 29/9
**I wanted [1]** 24/24
**I was [6]** 15/24 16/1 29/5 30/13 31/15 31/16
**I will [2]** 6/25 42/5
**I'd [5]** 10/20 15/1 15/5 24/7 30/9
**I'll [9]** 11/3 11/24 21/2 22/10 23/8 27/10 28/7 32/2 32/9
**I'm [22]** 5/16 11/2 11/24 12/9 12/18 13/24 14/9 14/10 17/2 18/5 19/20 19/23 19/24 21/3 23/13 23/18 24/13 32/2 34/21 36/6 36/23 40/19
**I'm going [1]** 32/2
**I'm just [2]** 12/18 21/3
**I'm not [8]** 11/24 12/9 19/20 19/23 23/18 34/21 36/6 40/19
**I'm not sure [1]** 36/23
**I'm sorry [1]** 5/16
**I've [10]** 15/6 19/8 20/7 23/21 24/8 31/20 31/20 34/17 35/4 38/19
**identified [2]** 35/8 39/4
**identify [2]** 37/20 37/20
**ill [1]** 4/24
**immediate [1]** 40/9
**immediately [1]** 16/10
**immobile [1]** 5/1
**impact [3]** 21/7 34/10 36/19
**imperfect [1]** 22/23
**important [2]** 10/21 16/19
**impose [2]** 26/24 32/13
**imposed [3]** 32/19 39/5 41/16
**imposition [1]** 40/6
**imprisonment [7]** 6/5 13/1 20/3 20/14 22/22 24/25 26/19
**incalculable [4]** 17/22 21/12 26/17 26/20
**incapacitated [1]**

**incarceral [1]** 34/13
**incarceration [3]** 26/7 26/25 34/10
**incident [1]** 8/14
**include [4]** 5/7 26/25 39/7 40/24
**included [2]** 4/19 11/22
**including [1]** 4/2
**inconsistency [1]** 29/7
**incurring [1]** 37/13
**Indiana [1]** 1/19
**indicate [1]** 10/10
**indicated [1]** 29/13
**indication [2]** 27/14 27/17
**individual [2]** 7/23 23/10
**ineffective [2]** 22/3 41/11
**influence [2]** 19/10 33/24
**influences [1]** 25/10
**influencing [1]** 19/14
**information [5]** 13/8 23/10 24/10 26/4 29/13
**infraction [1]** 31/21
**initial [2]** 24/15 30/16
**initially [1]** 10/1
**insufficient [1]** 10/5
**intellectual [1]** 7/16
**intended [3]** 7/13 7/14 21/8
**intent [1]** 11/16
**intention [1]** 17/18
**interest [2]** 16/11 17/17
**interrupted [1]** 24/21
**interview [2]** 31/17 33/18
**interviewed [5]** 15/13 15/22 21/25 33/16 34/1
**interviews [2]** 17/11 38/8
**investigation [5]** 3/24 30/16 39/5 40/23 41/2
**invites [1]** 9/12
**involve [3]** 13/4 35/9 35/13
**involved [8]** 5/13 5/14 8/8 22/7 33/2 38/1 38/3 38/7
**involves [1]** 19/5
**involving [2]** 9/25 22/23
**is [103]**
**isn't [1]** 18/20
**isolate [1]** 24/3
**issue [4]** 7/9 10/17 11/12 16/14
**issues [1]** 25/8
**it [65]**
**it's [42]** 8/14 8/22 9/10 9/21 10/12 12/23 13/7 14/8 14/16 14/16 14/17 18/3 19/9 20/2 20/4 20/18 20/18 20/18

**I**

**it's... [24]** 20/20 21/13 21/16 23/9 24/2 24/7 24/19 25/7 26/15 27/12 28/2 28/25 29/5 30/8 33/10 33/18 35/10 35/24 35/25 36/9 37/16 37/21 38/13 42/10
**its [2]** 6/3 15/11
**itself [3]** 14/16 20/4 34/20

**J**

**jail [1]** 36/20
**job [2]** 7/2 7/3
**jobs [1]** 25/20
**Johns [3]** 4/23 4/24 15/15
**Johns' [1]** 25/18
**JSIN [6]** 12/8 23/2 23/6 23/12 26/4 29/12
**JUDGE [1]** 1/10
**July [1]** 1/5
**June [2]** 4/24 11/10
**just [49]**

**K**

**kept [1]** 7/23
**kid [2]** 30/23 31/4
**kid's [1]** 31/1
**kill [1]** 8/17
**killed [2]** 8/15 9/3
**kind [6]** 7/22 10/25 13/18 14/15 23/4 30/16
**kinds [1]** 32/24
**knew [3]** 9/5 18/11 18/16
**know [47]**
**knowledge [1]** 8/20
**knows [2]** 25/19 27/23

**L**

**laid [1]** 21/23
**large [2]** 19/7 35/6
**last [7]** 15/11 19/3 31/12 31/12 33/17 38/20 39/24
**law [12]** 7/19 8/19 15/13 15/22 17/11 21/16 21/25 26/10 32/20 34/1 35/20 38/8
**lawful [1]** 7/10
**lawfully [2]** 7/1 16/5
**lawyer [1]** 41/21
**learn [1]** 20/24
**learned [3]** 4/18 10/7 31/10
**least [16]** 7/19 7/24 8/5 11/13 12/1 12/10 12/21 13/11 19/8 19/14 27/13 28/2 28/12 29/1 33/6 39/12
**leg [1]** 4/25
**legally [4]** 7/8 7/10 15/14 33/15
**legislative [1]** 11/16
**length [1]** 20/3
**less [2]** 14/9 38/18

less than Guidelines...
**Range [1]** 38/18
**lesser [2]** 29/4 29/5
**let [5]** 3/22 5/10 8/1 36/22 42/5
**let's [1]** 36/25
**letter [2]** 15/5 15/15
**letters [1]** 26/23
**level [9]** 5/13 5/17 5/19 5/21 7/23 12/3 12/12 23/18 35/10
**levels [5]** 5/14 5/15 5/17 5/19 5/21
**liability [1]** 37/16
**life [4]** 25/11 31/1 31/4 34/4
**like [14]** 15/1 16/12 18/4 19/13 22/4 27/2 27/4 29/25 30/9 30/14 31/19 31/22 33/15 42/1
**likely [1]** 11/12
**line [1]** 12/6
**listed [1]** 40/16
**listing [1]** 3/22
**little [3]** 9/22 28/9 28/18
**living [1]** 25/12
**local [1]** 39/8
**logical [1]** 21/10
**long [2]** 30/6 30/17
**longer [1]** 20/15
**look [3]** 12/20 18/23 28/6
**looked [1]** 16/18
**looming [1]** 10/25
**loses [1]** 25/14
**lost [2]** 6/23 6/25
**lot [5]** 6/15 7/5 9/2 28/2 28/3
**love [1]** 26/11
**lower [1]** 13/4
**luck [1]** 42/12

**M**

**macro [1]** 36/1
**made [4]** 5/9 15/6 31/20 33/4
**majority [4]** 8/22 17/13 27/19 28/1
**make [11]** 5/6 5/8 6/20 23/22 28/17 31/8 33/24 37/12 39/25 40/2 40/20
**makes [2]** 9/8 37/3
**making [1]** 19/9
**man [2]** 20/14 21/19
**manager [3]** 15/15 25/18 25/19
**mandatory [2]** 39/2 39/7
**manufacturers [1]** 21/11
**many [6]** 8/18 13/13 21/20 27/5 27/15 36/8
**marijuana [1]** 17/25
**market [1]** 16/10
**Marshal [1]** 30/6
**Maryland [1]** 33/5
**material [1]** 12/1

materials [4] 6/16 6...
9/12 10/9
**matter [2]** 8/14 43/4
**maximum [2]** 41/9 41/10
**may [11]** 6/12 8/24 17/8 18/22 21/7 24/13 24/14 24/16 27/7 39/8 41/22
**maybe [4]** 15/10 20/20 23/13 23/14
**me [32]** 3/22 4/20 5/10 12/25 16/21 16/22 17/11 17/15 20/8 21/6 23/4 24/4 26/15 28/6 28/9 30/8 30/10 30/20 30/23 31/2 31/12 31/17 34/3 34/24 35/24 36/11 36/22 37/4 39/22 39/24 40/21 41/9
**mean [34]** 12/25 14/1 14/5 14/8 14/13 16/20 17/16 18/1 18/6 18/18 19/17 19/18 20/6 20/9 20/13 21/10 21/14 21/24 22/2 22/11 22/15 24/8 24/8 24/18 25/3 25/4 25/17 28/6 28/11 28/14 28/25 29/3 35/21 37/14
**meant [1]** 15/7
**mechanical [1]** 2/8
**mediation [1]** 10/10
**medical [1]** 32/23
**meet [1]** 24/25
**MEHTA [2]** 1/10 3/3
**member [1]** 16/17
**memo [2]** 11/24 16/24
**memorandum [7]** 4/1 4/2 4/20 6/4 6/9 15/7 26/23
**mere [1]** 8/7
**merely [2]** 15/24 16/1
**Merit [1]** 2/3
**message [1]** 22/25
**might [2]** 21/2 22/9
**MINOR [46]**
**Minor's [11]** 10/23 13/20 15/9 17/7 17/18 19/13 21/24 23/1 27/17 38/6 38/20
**minutes [2]** 24/19 32/2
**missing [1]** 4/5
**mobile [1]** 10/18
**money [1]** 30/14
**month [4]** 8/7 10/20 13/1 38/23
**months [18]** 5/23 6/4 7/12 7/17 15/10 15/12 15/22 20/15 25/13 28/10 30/15 31/12 31/12 31/21 32/10 38/5 38/17 38/20
**Moran [1]** 26/5
**more [13]** 9/23 14/10 14/10 15/17 20/9 20/9 22/4 25/14 26/3 28/3 36/24 37/7 37/17

morning [8] 3...
3/14 3/15 3/16 3/18 6/1 6/2
**most [1]** 13/2
**mother [5]** 15/19 22/11 25/11 34/9 42/9
**Mr [1]** 37/1
**Mr. [87]**
**Mr. Minor [44]**
**Mr. Minor's [11]** 10/23 13/20 15/9 17/7 17/18 19/13 21/24 23/1 27/17 38/6 38/20
**Mr. Moran [1]** 26/5
**Mr. Willis [25]** 6/16 6/22 16/22 17/4 17/5 17/7 17/14 17/18 17/19 17/25 18/4 18/5 27/5 27/19 27/20 27/25 28/8 28/13 29/8 33/8 34/3 35/25 36/10 37/3 37/6
**Mr. Willis' [6]** 6/16 17/1 17/19 18/11 27/6 33/20
**Ms. [8]** 4/9 9/14 11/22 11/24 14/24 17/8 27/1 36/23
**Ms. Mullin [8]** 4/9 9/14 11/22 11/24 14/24 17/8 27/1 36/23
**much [4]** 25/6 31/23 31/24 34/25
**mullin [11]** 1/17 1/21 3/10 4/9 9/14 11/22 11/24 14/24 17/8 27/1 36/23
**multiple [2]** 33/9 38/8
**murder [1]** 8/25
**must [6]** 32/11 32/16 39/9 39/11 39/13 39/20
**my [19]** 4/19 5/16 7/24 8/3 9/21 15/6 15/23 16/22 17/10 18/5 22/11 24/24 30/12 30/12 30/19 30/24 31/3 31/3 31/8
**myself [1]** 23/8

**N**

**narrow [1]** 31/14
**nation [1]** 26/11
**nature [5]** 16/4 19/4 32/16 33/1 36/15
**nearly [1]** 12/16
**necessarily [1]** 27/22
**necessary [3]** 32/14 34/24 41/1
**need [6]** 4/14 22/24 32/18 32/24 34/16 40/1
**needed [1]** 32/22
**needs [1]** 25/23
**never [4]** 8/24 9/4 20/7 25/24
**nevertheless [1]** 38/7
**new [1]** 11/13
**next [2]** 20/25 37/8
**no [27]** 1/4 3/7 4/7 5/22 8/4 8/13 8/16 9/9 9/17 11/1 11/3 13/3 13/8

18/6 18/24 19/6 20/7 20/15 20/24 25/25 28/13 28/13 36/16 37/4 38/7 42/3
**noon [1]** 31/18
**Northwest [1]** 40/10
**not [65]**
**note [2]** 10/15 11/7
**notes [1]** 5/16
**nothing [4]** 4/7 16/7 26/16 37/10
**notice [1]** 41/7
**notify [2]** 39/22 40/12
**now [12]** 3/2 4/20 5/1 13/20 22/7 22/7 22/8 22/10 25/17 25/20 26/1 26/13
**number [6]** 5/18 8/21 12/5 27/11 28/4 37/20
**numbers [5]** 9/1 12/8 12/9 26/11 38/3
**NW [2]** 1/15 2/5

**O**

**objections [1]** 41/25
**objectives [1]** 32/14
**obligation [1]** 40/13
**obligations [1]** 40/8
**obliterated [2]** 9/1 38/3
**observations [1]** 10/2
**obtain [1]** 29/15
**obtained [1]** 40/15
**obvious [1]** 9/10
**obviously [3]** 26/1 29/5 35/2
**occasions [1]** 17/20
**October [3]** 33/4 33/17 43/7
**odds [1]** 36/7
**off [4]** 17/9 27/18 30/11 31/6
**offenders [2]** 36/21 36/22
**offending [1]** 34/25
**offense [27]** 5/13 5/17 5/19 5/21 6/21 11/14 12/2 12/3 12/12 12/13 15/9 15/12 16/5 19/5 22/6 23/17 23/18 27/24 32/17 32/19 32/21 33/2 35/7 35/10 35/19 36/15 40/16
**offenses [4]** 23/24 23/25 33/10 36/21
**offer [1]** 38/10
**offered [1]** 40/3
**office [9]** 1/14 3/11 23/9 39/3 39/14 39/17 40/22 40/24 41/3
**Office's [1]** 3/25
**officer [3]** 2/2 23/10 26/6
**Officer's [1]** 24/15
**Official [1]** 2/4
**oftentimes [1]** 19/9
**okay [18]** 3/17 3/21 4/13 5/10 5/24 13/15 14/23 24/7 24/21 27/21

## O

**okay... [8]** 28/5 29/10 29/22 29/25 30/6 31/24 40/20 42/13
**old [4]** 13/20 30/23 34/3 35/15
**older [1]** 16/13
**once [1]** 14/17
**one [28]** 4/17 8/10 8/13 8/15 8/25 12/4 12/7 12/7 13/11 13/16 15/1 16/6 17/12 17/24 19/8 21/21 23/14 27/3 28/11 29/1 30/19 31/3 33/20 35/16 36/9 37/4 37/15 39/11
**online [1]** 34/6
**only [12]** 6/21 8/8 8/14 9/24 12/5 12/7 16/23 20/8 23/16 30/13 35/12 37/24
**open [2]** 26/13 26/14
**opportunities [1]** 6/25
**opportunity [2]** 6/24 30/10
**option [1]** 14/20
**options [2]** 7/5 39/4
**order [3]** 7/4 40/18 40/25
**ordered [3]** 38/22 38/24 40/14
**other [13]** 8/17 13/8 13/16 16/22 17/25 18/9 20/10 28/23 29/2 36/3 36/8 36/21 36/21
**others [7]** 6/14 6/22 9/11 13/13 33/7 33/21 35/15
**otherwise [2]** 33/14 36/6
**ought [6]** 13/17 13/24 20/9 20/10 36/13 38/12
**our [5]** 21/13 21/21 23/9 26/22 29/15
**out [24]** 7/12 7/15 7/19 12/25 13/13 15/25 17/2 17/19 19/7 19/16 20/23 22/7 22/8 23/4 24/14 25/14 25/15 25/19 34/18 35/18 36/8 36/18 37/19 37/22
**outcome [1]** 11/4
**outgrowth [2]** 28/23 28/25
**over [11]** 7/17 12/5 15/9 19/3 22/3 25/16 30/20 33/3 33/4 37/23 37/23
**overall [1]** 36/24
**overlap [1]** 11/15
**overly [1]** 22/12
**own [1]** 33/12

## P

**paid [1]** 40/13
**pandemic [4]** 6/23 6/25 33/24 34/7
**Papa [4]** 4/23 4/23

**paper [1]** 29/7
**Paragraph [1]** 4/22
**paralegal [2]** 23/9 29/15
**part [6]** 11/23 18/23 28/21 28/23 36/9 39/4
**participation [1]** 39/18
**particular [3]** 12/2 35/7 35/8
**particularly [4]** 11/5 11/6 35/24 36/15
**parties [1]** 5/11
**pass [1]** 22/13
**passed [1]** 11/11
**Paul [2]** 1/13 3/9
**paul.courtney [1]** 1/16
**pay [3]** 9/8 38/24 40/6
**payable [1]** 40/9
**pending [1]** 13/21
**people [15]** 7/4 9/6 11/1 14/18 19/6 19/16 19/20 19/21 22/9 26/11 26/13 33/14 36/3 36/5 36/15
**per [1]** 25/9
**percent [1]** 12/17
**percentage [1]** 35/6
**perfect [1]** 23/1
**performing [1]** 39/16
**perhaps [3]** 28/7 33/6 38/9
**period [5]** 26/25 33/3 34/10 37/23 38/23
**periodic [1]** 39/12
**permission [1]** 41/19
**permits [1]** 23/16
**permitted [3]** 41/5 41/16 42/10
**person [11]** 3/12 7/20 8/17 9/9 19/9 20/24 20/25 35/13 35/14 37/8 37/15
**person's [1]** 38/2
**personally [1]** 21/22
**perspective [1]** 17/7
**phone [2]** 30/4 30/5
**phrased [1]** 9/22
**physical [4]** 9/14 10/2 15/24 16/2
**physically [2]** 8/13 8/15
**pick [2]** 17/6 17/20
**pin [1]** 7/6
**pizzas [1]** 5/2
**place [1]** 30/24
**placed [2]** 6/16 42/1
**placement [1]** 39/11
**Plaintiff [1]** 1/4
**plans [1]** 10/19
**play [1]** 13/24
**played [1]** 37/19
**plea [4]** 9/16 15/5 40/17 41/12
**plea agreement [1]** 9/16
**Please [2]** 3/4 32/7
**plus [4]** 7/18 16/23

**point [3]** 7/6 15/1 42/1
**pointed [1]** 34/18
**pointing [2]** 15/24 16/1
**points [2]** 6/9 6/23
**police [2]** 20/9 20/9
**poor [1]** 15/19
**poses [1]** 42/6
**positive [5]** 15/20 15/21 20/17 22/5 25/10
**possess [1]** 39/9
**possession [2]** 21/20 26/12
**possible [1]** 24/2
**post [1]** 34/5
**post-graduate [1]** 34/5
**potential [1]** 36/22
**premium [1]** 9/8
**present [2]** 27/4 34/4
**Presentence [4]** 3/24 39/5 40/23 41/2
**preserved [1]** 41/8
**presiding [1]** 3/3
**presumably [7]** 13/4 13/13 18/11 27/14 28/25 29/4 37/7
**pretense [1]** 7/10
**pretrial [5]** 31/21 34/7 34/15 38/21 42/8
**pretty [1]** 31/23
**Prettyman [1]** 2/5
**prevent [2]** 10/16 22/24
**primary [2]** 34/9 38/21
**Prince [1]** 30/24
**principles [2]** 9/15 9/23
**prior [9]** 5/22 18/24 19/6 30/15 33/9 33/9 36/16 37/11 37/22
**prison [15]** 8/12 15/19 20/3 21/14 21/19 22/2 22/5 22/13 25/4 25/7 25/13 25/19 25/21 26/16 31/19
**Prisons [1]** 38/17
**probably [1]** 9/22
**probation [16]** 2/2 3/11 3/25 11/3 21/4 23/9 24/15 26/6 26/7 39/3 39/14 39/17 39/22 40/22 40/24 41/3
**problem [5]** 11/9 11/17 35/23 36/4 36/9
**problems [4]** 34/11 34/12 34/15 36/1
**proceed [1]** 3/18
**proceedings [5]** 1/9 2/8 3/13 42/17 43/4
**proceeds [1]** 40/15
**process [1]** 28/21
**produced [1]** 2/8
**profit [2]** 6/20 7/14
**program [2]** 39/18 39/19
**programming [1]** 25/6
**progress [1]** 31/20
**prohibiting [1]** 9/9

**promote [3]** 22/16 32/20
**promoting [2]** 25/3 26/10
**proof [1]** 27/12
**property [1]** 40/14
**prosecutes [1]** 9/3
**prospect [1]** 34/19
**protect [1]** 32/21
**provide [4]** 32/20 32/22 35/20 39/20
**provided [1]** 35/5
**provides [1]** 12/11
**PSR [4]** 4/18 4/19 4/22 5/7
**public [5]** 1/18 15/7 20/4 30/22 32/22
**published [1]** 4/19
**pulled [1]** 30/20
**punishable [1]** 11/14
**punished [2]** 11/18 19/20
**punishment [5]** 6/6 21/15 32/20 34/20 35/20
**purchase [5]** 7/10 17/17 20/16 22/20 33/17
**purchased [4]** 7/8 7/9 19/18 20/22
**purchases [3]** 19/10 33/4 33/25
**purchasing [4]** 11/8 16/11 18/20 33/25
**purpose [3]** 8/16 8/16 9/10
**purposes [5]** 6/7 19/17 27/5 34/21 41/21
**pursuant [1]** 41/14
**put [5]** 8/5 11/2 20/22 22/4 36/22
**putting [7]** 16/10 16/15 20/23 22/2 22/3 25/4 26/15

## Q

**qualify [1]** 26/18
**quality [2]** 28/13 36/14
**quantifiable [1]** 26/20
**quantify [1]** 17/23
**quantifying [1]** 27/11
**quantity [1]** 29/4
**question [6]** 7/22 13/16 15/11 24/22 29/12 36/24
**questions [1]** 11/21
**quick [2]** 6/20 29/11
**quickly [1]** 9/24
**quite [9]** 12/9 12/22 18/12 19/20 20/7 23/13 23/18 34/21 37/21

## R

**raise [2]** 6/10 41/11
**range [7]** 5/23 14/2 14/6 14/7 32/10 38/18 41/10
**rather [1]** 34/20

**promote [3]** 33/6 34/25 37/25 39/23
**re-entry [1]** 39/23
**re-offending [1]** 34/25
**re-sold [2]** 33/6 37/25
**reach [1]** 24/14
**ready [1]** 3/18
**real [1]** 35/22
**really [8]** 7/9 9/15 13/7 17/23 25/6 26/18 35/21 35/21
**Realtime [1]** 2/4
**reason [3]** 8/10 9/17 40/2
**reasons [5]** 26/22 35/16 35/17 38/18 38/21
**received [6]** 3/22 15/15 28/22 35/7 35/14 35/15
**recent [5]** 10/18 11/6 11/16 14/10 14/10
**recently [1]** 34/8
**recess [3]** 32/5 32/6 42/16
**recipient [1]** 7/13
**recipients [1]** 9/6
**recognized [1]** 11/7
**recommendation [4]** 3/25 13/9 28/8 28/19
**recommended [1]** 39/3
**record [12]** 6/17 10/5 10/24 11/1 11/3 17/9 25/25 27/18 28/16 33/9 42/1 43/3
**recorded [1]** 2/8
**records [4]** 7/22 16/8 19/21 33/14
**recover [1]** 8/19
**recovered [3]** 8/23 9/4 13/11
**reduction [1]** 5/20
**reference [1]** 7/7
**referred [1]** 37/18
**reflect [3]** 22/22 32/19 36/13
**reflected [1]** 15/4
**reflects [1]** 4/22
**refrain [1]** 39/9
**Registered [1]** 2/3
**regretful [1]** 30/12
**regrettably [1]** 36/10
**rehabilitation [2]** 25/3 38/20
**reintegrate [1]** 40/4
**reiterate [1]** 32/9
**relationship [2]** 16/12 25/18
**relative [1]** 37/3
**release [10]** 6/6 34/7 34/15 38/21 38/23 39/15 39/23 40/22 42/6 42/9
**remand [1]** 10/6
**remorseful [1]** 30/11
**remove [1]** 25/10
**repeatedly [1]** 20/2
**replicate [1]** 14/17
**report [5]** 3/24 4/11

50

**R**

report... [3] 39/5 40/23 41/2
reported [1] 9/24
Reporter [4] 2/3 2/3 2/4 2/4
representative [1] 27/7
request [3] 15/23 25/9 41/22
requesting [1] 6/4
requires [1] 18/10
residence [1] 40/25
residents [1] 26/14
resource [4] 23/7 23/11 29/14 29/20
resources [1] 40/1
respect [8] 12/11 15/23 16/4 20/1 21/16 26/10 32/20 35/20
response [2] 19/23 29/12
responsibility [5] 5/20 15/4 15/8 27/25 31/9
responsible [3] 8/25 31/3 37/5
restrictive [1] 9/23
result [3] 26/8 33/23 40/16
resulted [2] 6/17 13/6
retread [1] 6/8
return [1] 41/2
reversed [1] 10/4
reviewed [3] 3/23 4/10 4/11
right [26] 3/14 3/21 4/9 4/13 4/14 5/8 13/18 14/4 14/9 14/12 18/25 19/1 20/25 24/1 25/17 26/13 27/1 27/16 27/21 32/1 32/9 40/20 41/8 41/15 41/23 42/4
righted [1] 22/1
rights [1] 21/21
rise [3] 3/2 32/4 42/15
risk [1] 34/25
RMR [2] 43/2 43/8
robust [1] 35/10

**S**

Safer [1] 11/11
safety [3] 11/18 22/16 25/23
said [5] 15/16 18/5 30/14 34/20 38/1
same [8] 9/23 13/5 13/6 19/4 19/15 21/2 37/19 38/1
sample [1] 35/11
sanction [1] 22/23
saw [1] 29/6
say [12] 4/24 6/25 8/22 10/20 11/1 12/23 16/5 18/2 20/25 21/2 28/7 36/6
saying [3] 18/18 30/11 31/19
says [1] 16/25
scenes [2] 17/24 18/20

school [5] 30/22 30/22 34/4
seal [1] 37/21
search [1] 23/16
seated [2] 3/4 32/7
second [1] 5/15
see [5] 13/23 23/23 29/17 39/24 42/12
seeks [1] 6/13
seems [6] 7/2 11/15 13/21 19/13 20/8 21/6
seen [1] 24/8
self [3] 19/18 42/6 42/11
self-defense [1] 19/18
self-surrender [2] 42/6 42/11
sell [6] 7/14 17/18 36/18 37/9 37/12 37/14
sellers [1] 21/11
selling [2] 9/5 17/12
send [2] 17/6 22/25
sense [8] 9/9 20/11 23/22 29/1 30/16 35/12 37/4 37/12
sent [1] 17/19
sentence [31] 6/4 6/18 10/21 10/21 10/25 12/7 13/1 13/2 13/13 15/20 20/3 22/21 24/20 24/25 26/7 26/24 28/10 28/22 31/19 32/13 32/18 35/14 36/13 38/4 38/15 38/18 41/1 41/5 41/8 41/16 41/23
sentenced [3] 8/12 37/2 38/22
sentences [12] 12/2 13/1 13/2 13/4 23/23 24/3 32/24 35/6 35/7 35/13 35/16 36/20
sentencing [23] 1/9 3/17 4/1 4/2 4/19 6/4 6/9 6/11 9/12 10/9 11/23 12/21 16/24 23/7 23/11 24/10 24/24 26/8 26/23 29/14 32/14 34/22 39/4
Sentencing Commission [1] 24/10
Sentencing Commission's [1] 12/21
sentiment [2] 28/21 37/17
separate [1] 8/8
serial [2] 9/1 38/3
serious [8] 10/21 10/25 11/8 11/17 13/12 13/12 35/21 36/12
seriously [2] 8/15 9/3
seriousness [3] 32/19 35/19 36/13
serve [1] 38/22
served [1] 38/4
service [2] 7/2 39/16
serving [2] 38/11 38/14
session [1] 3/3

setting [1] 34/13
seven [4] 12/5 12/7 29/2 35/8
Seventh [2] 9/19 10/4
severely [1] 11/19
shall [4] 39/1 40/11 41/2 41/7
share [1] 16/21
she [6] 11/25 22/13 31/19 38/4 38/4 38/13
Sherman [1] 9/20
Sherry [2] 2/2 3/11
shifts [1] 15/17
shook [1] 30/23
shop [3] 16/6 33/15 37/12
shops [7] 7/7 8/8 16/6 20/16 33/5 36/17 37/25
short [1] 37/23
shortly [1] 11/10
should [4] 11/18 14/13 32/23 36/5
shoulders [1] 21/17
show [1] 20/2
shown [3] 22/18 25/22 27/24
shows [3] 23/2 26/6 37/24
sides [1] 3/18
sign [1] 40/21
signed [1] 40/18
significant [2] 33/9 35/3
similar [2] 37/21 38/14
similarly [1] 38/6
since [6] 14/11 15/14 15/22 21/24 31/6 31/12
single [1] 31/21
sir [3] 3/15 39/24 42/12
sit [2] 11/20 25/8
sitting [1] 36/1
situated [1] 38/6
situation [3] 26/19 31/10 31/11
six [6] 5/14 5/17 7/12 7/17 8/7 25/13
six-month [1] 8/7
size [1] 35/11
slated [1] 5/2
small [1] 22/8
so [40] 3/17 3/22 5/12 8/22 10/12 10/24 11/3 11/16 12/18 13/1 13/4 14/6 14/17 14/20 16/14 16/18 19/6 19/10 22/2 22/21 23/6 23/18 24/4 24/23 25/6 25/13 25/16 26/22 27/14 28/1 29/13 29/19 30/16 35/17 36/8 36/12 36/19 37/7 40/21 41/7
So I think [2] 10/12 16/18
societal [1] 21/7
society [1] 21/13
sold [7] 6/21 16/25 17/13 18/4 29/3 33/6

sole [1] 22/13
some [14] 7/7 9/9 11/23 12/6 16/25 19/14 22/9 22/22 27/14 27/18 34/5 34/11 36/7 37/16
somebody [7] 7/16 8/1 20/22 29/2 36/16 37/10 37/22
someone [13] 8/14 9/3 16/9 16/12 16/18 19/10 22/4 23/15 25/22 26/19 30/13 31/1 37/13
something [2] 24/11 37/9
sometimes [1] 17/6
soon [1] 42/13
sorry [2] 5/16 24/21
sort [9] 7/15 7/18 12/14 14/10 17/2 17/21 22/12 24/23 28/13
speak [1] 30/10
speaks [1] 17/21
special [2] 38/24 39/15
specific [9] 8/21 11/25 18/21 22/17 23/19 25/1 26/3 34/23 34/24
specifically [2] 22/18 22/19
specify [1] 23/15
spoken [1] 27/13
spreadsheet [3] 23/7 29/14 29/15
stand [1] 12/25
stands [2] 32/5 42/16
start [7] 5/2 15/1 22/8 25/16 30/11 31/17 36/25
started [2] 4/15 34/6
state [3] 5/10 20/10 39/8
stated [2] 6/3 31/11
statement [3] 6/21 27/24 30/5
STATES [8] 1/1 1/3 1/10 1/14 3/7 9/20 11/13 41/14
statistic [1] 12/15
statistical [1] 12/5
statistics [2] 23/6 35/5
statute [4] 23/15 23/19 32/15 41/17
statutory [2] 41/9 41/10
steady [1] 34/5
stenography [1] 2/8
step [1] 30/14
steps [1] 13/22
still [1] 13/13
stop [4] 14/20 30/15 31/5 33/16
stopped [6] 8/8 16/7 20/15 21/24 22/5 30/18
store [1] 9/7
stored [1] 7/22
stores [5] 7/11 7/17 25/25 28/11 37/5
story [1] 30/21

straight [1] 31/14
straw [1] 11/8
street [7] 1/15 8/6 11/2 19/16 20/23 31/7 36/18
studies [1] 20/2
subject [1] 37/15
submit [5] 15/19 22/4 24/24 26/20 39/11
submitted [1] 40/21
substance [2] 39/9 39/9
substantial [3] 18/12 21/7 29/6
such [3] 8/4 40/12 41/21
suffer [1] 35/2
sufficient [1] 32/13
sugar [1] 35/22
suggest [1] 35/6
suggested [1] 34/18
suggestion [1] 12/1
Suite [1] 1/19
Sunday [1] 31/18
Superior [1] 28/15
supervise [1] 39/18
supervised [3] 6/5 38/23 39/15
supervision [4] 39/1 39/7 39/12 39/17
supplements [1] 4/4
supposed [2] 13/24 19/24
sure [11] 4/21 5/8 12/9 19/20 23/18 34/21 36/23 37/4 39/25 40/2 40/21
surely [1] 9/5
surprising [1] 28/9
surrender [2] 42/6 42/11
swath [1] 23/25

**T**

take [10] 4/14 7/9 15/6 15/17 16/14 24/19 25/11 31/1 31/9 32/2
taken [8] 13/21 13/22 14/6 15/21 22/10 28/18 34/17 35/4
taking [3] 10/10 31/4 42/9
talking [1] 36/1
talks [1] 26/17
target [1] 6/18
teenagers [1] 30/22
tell [1] 22/6
term [2] 8/12 38/17
termination [1] 41/3
terms [6] 11/17 21/5 34/2 35/4 35/19 36/24
terrible [1] 18/1
terribly [1] 35/10
test [1] 39/11
tests [1] 39/12
than [6] 8/17 25/15 32/13 34/20 36/20 38/18
thank [10] 4/6 14/25

**T**

**thank... [8]** 27/1 29/22 29/24 30/10 31/24 32/3 32/7 42/14
**thank you [9]** 4/6 14/25 27/1 29/22 29/24 30/10 31/24 32/3 42/14
**that [209]**
**that's [23]** 7/24 8/16 9/8 11/14 12/7 12/22 15/4 17/15 17/16 21/6 21/18 24/7 28/15 30/19 31/5 31/23 32/13 36/2 37/10 40/2 40/21 41/8 41/15
**their [1]** 8/16
**them [21]** 8/22 9/7 11/2 12/6 16/8 16/10 17/18 18/20 19/17 20/23 20/23 21/14 24/12 27/19 28/12 29/3 36/5 36/6 36/7 36/18 37/9
**themselves [1]** 21/1
**then [13]** 4/3 5/11 7/3 7/4 9/22 12/8 15/14 20/9 20/22 21/3 23/7 28/12 36/18
**there [22]** 4/4 7/5 7/10 7/18 8/4 9/2 10/4 10/6 12/4 12/25 13/2 18/6 21/6 21/6 24/16 25/9 36/4 36/8 36/19 36/20 38/2 41/25
**there's [23]** 5/16 6/15 7/6 7/7 8/16 9/17 12/1 12/5 12/14 13/8 26/13 27/22 28/13 29/14 29/19 32/1 34/25 35/17 35/22 36/8 36/14 38/7 41/6
**thereafter [1]** 39/12
**therefore [1]** 40/6
**these [14]** 3/12 6/21 7/8 8/15 8/25 9/6 11/5 12/9 16/15 17/2 17/22 19/8 36/18 37/6
**they [19]** 7/4 7/9 7/25 9/8 10/9 10/12 10/14 16/11 17/4 17/7 19/6 20/23 26/12 30/18 30/20 35/11 36/7 36/17 37/25
**they'd [1]** 20/24
**they're [3]** 19/17 19/18 34/12
**they've [1]** 37/7
**thing [2]** 21/2 27/3
**things [1]** 22/9
**think [41]** 6/16 10/12 13/17 14/13 14/15 14/20 15/10 16/18 16/24 18/10 18/15 18/16 20/11 20/18 20/24 21/10 21/15 22/21 24/9 26/4 26/6 27/9 27/23 28/21 31/2 31/23 33/12 33/18 34/12 34/25 35/20

**thinks [1]** 21/5
**this [58]**
**those [24]** 5/8 7/11 8/11 9/15 10/10 10/15 12/15 12/24 19/20 21/5 25/1 25/8 25/8 25/14 25/20 27/15 27/17 29/1 29/21 33/6 33/11 39/5 40/2 40/18
**thought [1]** 28/21
**thoughts [2]** 11/22 12/18
**threat [2]** 10/25 42/7
**three [11]** 5/21 6/5 25/9 25/13 27/13 28/9 28/14 30/15 30/21 33/5 35/15
**three-years [1]** 28/9
**through [6]** 24/12 24/14 24/24 26/5 27/6 33/3
**Throughout [1]** 6/15
**time [16]** 7/5 7/11 8/14 13/3 13/20 15/17 15/18 19/4 19/15 20/24 33/3 37/24 38/4 38/14 39/24 40/12
**time-served [1]** 38/4
**times [2]** 7/11 27/14
**titled [1]** 43/4
**today [1]** 6/10
**toes [1]** 30/15
**told [1]** 20/21
**tomorrow [1]** 5/3
**tonight [3]** 5/4 5/5 31/17
**took [1]** 30/24
**tossed [1]** 9/2
**total [2]** 5/21 23/17
**traceable [1]** 9/4
**track [1]** 13/22
**trafficking [6]** 5/15 5/18 11/8 11/13 13/5 33/2
**tragic [1]** 19/9
**training [1]** 32/23
**transactions [1]** 27/24
**transcript [3]** 1/9 2/8 43/3
**transcription [1]** 2/8
**transferred [2]** 16/24 28/12
**translates [1]** 34/21
**treatable [1]** 10/8
**treated [4]** 10/9 10/13 34/13 37/3
**treatment [2]** 41/1 41/4
**tried [5]** 12/20 18/25 23/4 30/23 31/1
**tries [1]** 7/6
**trips [1]** 8/8
**troubles [1]** 34/9
**true [3]** 17/23 18/9 18/22
**trying [2]** 17/2 31/4
**tug [1]** 22/12

**worth... [7]** 33/5 35/12 38/21 39/12
**type [2]** 14/21 19/5
**types [2]** 36/21 36/21
**typo [1]** 5/16

**U**

**U.S [2]** 40/9 40/24
**U.S.C [2]** 32/12 41/14
**ultimate [1]** 24/20
**ultimately [1]** 7/1
**under [6]** 9/13 9/15 11/12 12/16 19/10 37/21
**undermine [1]** 15/8
**understand [8]** 12/10 19/20 20/14 27/4 28/11 28/20 29/6 29/9
**understanding [6]** 7/24 8/3 9/21 12/24 16/23 17/10
**understood [2]** 20/8 33/12
**undoubtedly [1]** 21/13
**unequivocably [1]** 15/3
**unfortunately [1]** 28/3
**unique [1]** 14/15
**UNITED [8]** 1/1 1/3 1/10 1/14 3/7 9/20 11/13 41/14
**United States [2]** 11/13 41/14
**United States of [1]** 3/7
**unlawful [1]** 39/10
**unlawfully [1]** 39/9
**unless [3]** 9/9 19/19 32/1
**unnecessary [1]** 26/19
**unrecognizable [1]** 30/13
**until [4]** 4/24 8/14 34/8 40/12
**unwarranted [2]** 32/25 38/19
**up [25]** 4/14 7/19 7/25 13/14 13/14 16/18 17/6 17/20 17/24 17/25 18/11 18/16 18/19 19/16 24/5 27/5 27/15 30/3 30/4 30/8 33/13 33/19 37/6 37/7 38/13
**upon [1]** 41/3
**us [1]** 28/4
**USAO [1]** 1/13
**usdoj.gov [1]** 1/16
**use [2]** 18/5 39/10
**used [6]** 8/11 17/25 19/18 23/9 29/1 33/20
**useful [2]** 35/11 38/10
**using [1]** 19/17

**V**

**valued [1]** 15/16
**variance [2]** 9/15 15/23
**variety [2]** 35/16 35/17
**vary [1]** 9/18

**last... [4]** 26/11 27/19 28/1
**vaunted [2]** 21/20 26/12
**verification [1]** 39/20
**versus [2]** 3/8 9/20
**very [12]** 6/18 11/8 11/17 12/23 16/12 16/17 18/23 19/24 29/5 31/24 37/23 38/6
**vexed [1]** 29/6
**Vincent [1]** 1/13
**violations [1]** 42/8
**violence [7]** 13/14 21/13 21/23 22/24 22/25 25/24 35/23
**violent [8]** 8/25 13/12 14/16 14/17 18/13 28/16 33/10 37/11
**Virginia [1]** 37/23
**vocational [1]** 32/23
**voluntarily [4]** 15/12 21/25 30/15 31/5
**vs [1]** 1/5

**W**

**wage [1]** 25/12
**wages [1]** 25/14
**waives [1]** 40/6
**walk [4]** 7/16 33/14 36/17 37/14
**walked [2]** 28/11 37/5
**want [5]** 20/12 22/9 30/11 30/14 39/25
**wanted [5]** 5/6 6/20 7/4 16/2 24/24
**wants [2]** 4/20 31/17
**warranted [1]** 42/10
**was [87]**
**Washington [4]** 1/5 1/15 1/20 2/6
**wasn't [5]** 8/6 12/21 18/19 37/4 38/9
**way [5]** 35/17 35/22 36/8 36/22 37/2
**we [22]** 4/14 4/14 4/17 5/8 5/24 8/24 11/16 13/11 15/19 16/21 20/9 20/10 20/11 22/24 24/9 26/23 28/3 29/13 29/20 35/23 40/2 40/20
**we'll [3]** 5/11 39/25 42/12
**we're [6]** 3/17 18/18 23/18 26/11 28/1 35/25
**we've [1]** 25/1
**weapon [1]** 33/15
**weapons [8]** 7/18 8/2 11/5 27/15 34/1 37/13 37/23 38/2
**website [4]** 12/10 12/11 12/21 23/14
**week [1]** 5/1
**weigh [1]** 13/17
**weight [4]** 9/14 9/18 9/25 14/14
**welcome [1]** 31/25
**well [6]** 11/1 20/1

**went [8]** 7/11 16/6 17/4 17/13 20/22 27/19 28/21 37/22
**were [18]** 4/3 4/4 7/5 7/8 7/8 9/6 9/8 16/24 16/25 17/3 17/7 18/7 20/24 24/16 27/18 33/6 37/25 38/2
**weren't [1]** 7/9
**what [27]** 3/22 8/5 9/7 10/23 11/22 12/4 12/18 15/10 17/16 17/23 18/7 18/11 18/16 22/24 26/4 28/14 28/16 28/19 29/2 29/3 29/6 30/17 30/17 33/12 36/3 36/25 37/12
**what's [2]** 8/24 38/14
**whatever [1]** 14/14
**when [13]** 4/24 9/5 11/25 13/8 16/5 18/4 21/16 23/13 24/19 25/19 30/19 33/4 36/2
**where [10]** 7/6 9/3 11/24 13/3 18/6 18/10 23/3 25/4 26/11 37/6
**whether [1]** 27/6
**which [13]** 8/11 9/20 11/13 13/10 18/12 21/20 27/18 28/9 33/10 33/20 35/5 37/19 40/24
**while [4]** 22/13 39/1 39/6 39/17
**who [32]** 9/6 15/16 16/9 16/12 17/19 19/7 19/16 19/21 20/14 20/15 20/25 21/1 22/5 22/5 22/6 22/11 23/9 25/8 25/19 25/22 28/11 29/8 30/22 33/8 33/14 36/3 36/5 36/6 36/15 36/16 37/8 37/10
**who's [4]** 15/19 19/9 21/14 21/19
**whoever [1]** 27/7
**whom [1]** 17/3
**why [6]** 5/24 9/8 24/25 30/3 30/11 31/5
**wide [1]** 23/25
**will [10]** 6/25 34/11 38/15 38/16 38/22 39/15 39/18 39/22 41/23 42/5
**willfully [1]** 16/15
**William [3]** 2/3 43/2 43/8
**willing [2]** 9/8 15/17
**Willis [25]** 6/16 6/22 16/22 17/4 17/5 17/7 17/14 17/18 17/19 17/25 18/4 18/5 27/5 27/19 27/20 27/25 28/8 28/13 29/8 33/8 34/3 35/25 36/10 37/3 37/6
**Willis' [6]** 6/16 17/1 17/19 18/11 27/6 33/20
**within [5]** 12/15 39/11 39/22 40/11 41/7

**W**

**without [6]**  10/24 24/12 31/21 37/13 37/22 41/20
**won't [3]**  6/8 25/4 39/24
**words [1]**  20/10
**work [3]**  7/1 10/18 31/16
**worked [1]**  15/16
**worker [1]**  25/13
**working [5]**  4/23 4/23 10/19 31/6 31/11
**worse [1]**  26/10
**would [32]**  4/24 8/1 8/22 9/19 10/15 11/1 11/7 11/12 12/4 13/5 14/6 15/20 16/1 17/6 18/1 22/21 23/23 24/4 24/19 25/10 26/8 26/14 26/20 26/24 27/4 29/25 31/19 31/22 31/22 36/7 36/20 42/1
**wouldn't [2]**  26/2 36/6
**wound [1]**  22/3
**wreaks [1]**  21/13
**written [1]**  39/20
**wrong [3]**  17/15 30/17 35/25
**wrongfulness [1]**  6/13

**Y**

**yeah [5]**  12/20 24/18 29/1 29/18 30/8
**year [6]**  8/12 19/3 25/13 28/22 30/21 30/23
**years [12]**  6/5 11/6 11/14 11/14 12/6 13/20 25/9 25/14 28/9 34/3 35/15 38/11
**years' [1]**  28/14
**yes [6]**  3/19 3/20 4/12 16/16 20/20 30/2
**yet [3]**  21/13 37/2 37/9
**you [83]**
**you'll [4]**  23/4 28/6 38/24 39/24
**you're [9]**  14/18 14/19 16/21 23/14 28/10 28/19 31/25 39/17 40/3
**you've [6]**  24/18 27/13 29/3 30/25 36/10 36/11
**your [31]**  3/6 3/19 3/20 4/7 4/12 4/17 8/20 11/22 12/18 14/25 15/9 16/4 16/24 17/10 18/11 18/24 24/23 26/3 26/22 29/11 30/9 31/23 39/6 39/15 39/18 39/23 40/1 41/5 41/8 41/12 42/3
**Your Honor [17]**  3/6 3/19 3/20 4/7 4/12 4/17 14/25 15/9 16/4 17/10 24/23 26/3 26/22 29/11 30/9 31/23 42/3
**yourself [1]**  40/4

**Z**

**Zaremba [3]**  2/3 43/2 43/8